

NUMBER 13-06-00038-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

CITY OF ALTON, CARTER & BURGESS, INC.,
TURNER, COLLIE & BRADEN, INC., AND CRIS
EQUIPMENT COMPANY, INC.,                          Appellants,

v.

SHARYLAND WATER SUPPLY CORPORATION,               Appellee.

On appeal from the 206th District Court of Hidalgo County, Texas.

# O P I N I O N

### Before Justices Yañez, Rodriguez, and Garza
### Opinion by Justice Rodriguez

This case arises from the installation of a sanitary sewer system. By four issues,

appellant/cross-appellee, the City of Alton (Alton), contends the following: (1) it is immune

from suit;[1] (2) in the alternative, the trial court should not have submitted breach of contract issues; (3) there were no compensable damages and there was no evidence of damages caused by Alton; and (4) appellee/cross-appellant, Sharyland Water Supply Corporation (Sharyland), cannot recover attorney's fees against Alton. Appellants, Carter and Burgess, Inc. (C&B), Turner, Collie & Braden, Inc. (TCB), and Cris Equipment Company, Inc. (Cris), challenge, among other things, the status of Sharyland as a third-party beneficiary to their respective contracts with Alton. They also contend that the trial court erred in submitting a negligence question because that claim is barred by the economic loss rule. Furthermore, C&B, TCB, and Cris complain of the trial court's imposition of joint liability and attorney's fees against all defendants. Finally, cross-appellant, Sharyland, asserts that the trial court erred in refusing to grant equitable relief in lieu of the monetary damages awarded by the jury. We affirm in part, reverse and render in part, and reverse and remand in part, as to appellant Alton; we reverse and render as to appellants C&B, TCB, and Cris; and we affirm as to cross-appellant Sharyland.

## I. Factual Background

In the early 1980s, Alton, a Class A municipality located in Hidalgo County, Texas, installed a water distribution system to provide potable water to its residents.[2] Beginning

---

[1] Alton claims governmental immunity. *See Tooke v. City of Mexia*, 197 S.W.3d 325, 331 n.11 (Tex. 2006) (citing *Wichita Falls State Hosp. v. Taylor*, 106 S.W. 3d 692, 694 n.3 (Tex. 2003) ("Courts often use the terms sovereign immunity and governmental immunity interchangeably. However, they involve two distinct concepts. Sovereign immunity refers to the State's immunity from suit and liability. In addition to protecting the State from liability, it also protects the various divisions of state government, including agencies, boards, hospitals, and universities. Governmental immunity, on the other hand, protects political subdivisions of the State, including counties, cities, and school districts.")); *Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004) (concluding that governmental immunity operates like sovereign immunity and affords a similar protection to political subdivisions of the State, including counties and cities).

[2] Potable water is water that is suitable for drinking. *See* MERRIAM-WEBSTER ONLINE DICTIONARY, *available at* http://www.merriam-webster.com/dictionary/potable (last visited Nov. 24, 2008).

in 1981, Alton and Sharyland entered into numerous water service agreements (collectively referred to as the Water Service Agreement). By the Water Service Agreement, Sharyland agreed to sell and deliver water and/or sewer service to Alton, and Alton agreed to purchase and receive water and/or sewer service from Sharyland. In order to obtain water for its new system, Alton entered into a Water Supply Agreement with Sharyland, a non-profit rural water supply corporation, on August 12, 1982. Under the 1982 agreement, Alton conveyed its new water distribution system to Sharyland, and Sharyland agreed to provide Alton with water.

During the 1990's, the citizens of Alton relied on septic systems and outhouses for sewage disposal. In 1994, Alton obtained development grants for the installation of a sanitary sewer system. Part of the septic system was built in the public right-of-way and another part connected the septic system from the public right-of-way to individual houses. For the public right-of-way phase, Alton entered into contracts with L.L. Rodriguez and Associates to design a sanitary sewer system; C&B to manage the project; and TCB to provide inspection services for the construction phase. Alton also contracted with Cris for installation of the sewer main and the residential service connections within the public right-of-way. Cris subcontracted with Grab Pipeline Services, Inc., to assist in the installation.[3] The construction of the sewer system was completed in 1999.

Alton's sewer system consists of main sewer lines, residential service connections, and yard lines. The residential service connections join perpendicular to the main sewer line and run horizontally from the main sewer line to the residential property line where they

---

[3] The jury found no liability on the part of L.L. Rodriguez and Associates or Grab Pipeline Services, Inc., and those entities are not parties to this appeal.

3

connect with the yard line. The yard line runs from the property line to the individual home to complete each residential connection. In certain locations, Alton's sewer main and Sharyland's water main run parallel to each other in a public right-of-way, resulting in some of Alton's residential service connections crossing Sharyland's water main in order to connect to the yard lines. The residential service connections are the only portions of Alton's sewer system at issue in this case.[4]

## II. Procedural Background

### A. Pleadings

On March 3, 2000, Sharyland sued Alton for breach of the Water Supply Agreement and the Water Service Agreement.[5] Sharyland also sued C&B, TCB, and Cris, all engineering firms, for negligence and breach of contract. In addition, Sharyland asked the trial court to enjoin Alton from operating sewer lines across Sharyland's waterlines in a wrongful manner and to compel Alton to reconstruct the sewer lines in a manner consistent with the parties' agreements, state law, and proper engineering practice.

Sharyland alleged that the sanitary sewer residential service connections were installed in violation of state regulations and industry standards and represented a threat to Sharyland's potable water system. Sharyland sought a declaration of the parties' rights

---

4 Sascon Construction Co. (Sascon) installed the yard lines on private property. Sascon is not a party to the lawsuit.

5 Sharyland also alleged negligence and nuisance claims against Alton. At the close of the evidence at trial, however, Sharyland dropped its claim for negligence. It had earlier dropped its nuisance claim. The issue of breach of contract, as against Alton, was submitted to the jury.

In addition, an issue on unconstitutional taking was submitted; however, the jury found that Alton did not commit an unconstitutional taking of Sharyland's property. It also found that Sharyland was not estopped from complaining about the manner in which the sewer system was installed. These findings are not challenged on appeal.

4

and obligations under section 317.13 of the Texas Commission on Environmental Quality Design Criteria for Sewerage Systems (the Commission) as it related to the construction of the sewer system in proximity to its waterlines.[6] *See* 30 TEX. ADMIN. CODE § 317.13(1)(B) (2008) (33 TEX. REG. 2126, 2234, *adopted* 33 TEX. REG. 6928 (2008) (codified at 30 Tex. Admin. Code. Ann. §§217.1-.33).

Alton counterclaimed, asking the trial court to declare its August 12, 1982 Water Supply Agreement with Sharyland null and void. In response, Sharyland asserted that Alton's counterclaim was preempted and/or barred by, among other things, the provisions of section 1926(b) of title 7 of the United States Code, which limits a government's authority to curtail the service provided by a utility during the term of repayment of a federal loan. *See* 7 U.S.C.A. § 1926(b) (1999).[7]

## B. Motions for Summary Judgment

---

6 Section 317.13, a regulation promulgated by the Texas Commission on Environmental Quality (the Commission), provides as follows:

> Where a sanitary sewer crosses a waterline and the sewer is constructed of cast iron, ductile iron, or PVC with a minimum pressure rating of 150 psi, an absolute minimum distance of six inches between outside diameters shall be maintained. In addition, the sewer shall be located below the waterline where possible, and one length of the sewer pipe must be centered on the waterline.

30 TEX. ADMIN. CODE § 317.13(1)(B) (2008) (33 TEX. REG. 2126, 2234, *adopted* 33 TEX. REG. 6928 (2008) (codified at 30 TEX. ADMIN. CODE ANN. §§217.1-.33).

7 Providing for water and waste facility loans and grants, section 1926(b) sets out the following:

> The service provided or made available through any such association shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation or other public body, or by the granting of any private franchise for similar service within such area during the term of such loan; nor shall the happening of any such event be the basis of requiring such association to secure any franchise, license, or permit as a condition to continuing to serve the area served by the association at the time of the occurrence of such event.

7 U.S.C.A. § 1926(b) (1999).

Sharyland filed two motions for summary judgment. In its motion for partial summary judgment Sharyland asked the trial court to grant its request for declaratory judgment relief and declare that section 317.13 applied to all sewers located in proximity with waterlines in this case. *See* 30 TEX. ADMIN. CODE ANN. § 317.13(1)(B). In its motion for summary judgment, Sharyland urged that section 1926(b) barred Alton's counterclaim. *See* 7 U.S.C.A. § 1926(b). The trial court granted Sharyland's motion for partial summary judgment on its declaratory judgment claim finding that section 317.13 "applies to the situation presented in this case" and that "[t]he term 'sewer' in the context of . . . [c]hapter 317 refers to 'a conduit which carries off water or waste matter' and includes sanitary sewer residential service connections." *See* 30 TEX. ADMIN. CODE § 317.13. The trial court also granted Sharyland's motion for summary judgment, concluding that section 1926(b) barred Alton's counterclaim and ordering that Alton take nothing by its counterclaim against Sharyland. *See* 7 U.S.C. § 1926(b).

## C. Jury Trial

Sharyland's breach of contract claim against Alton and its breach of contract and negligence claims against C&B, TCB, and Cris were tried to a jury. The jury found that Alton breached its Water Supply Agreement with Sharyland by failing to maintain required separation distance between sewer lines and that it breached the Water Service Agreement by failing to comply with Sharyland's rules and regulations.[8] The jury also

---

8 The jury found that Alton failed to comply with the following provision—paragraph 6—of the Water Supply Agreement:

In the event of the installation of a sewer system, such sewer lines and systems shall remain a required distance from the water lines and all septic tank drain fields shall be at least ten (10) feet from the water lines, or as otherwise prescribed by the rules and regulations of the Texas State Department of Health.

6

found that C&B, TCB, and Cris each breached their respective contracts with Alton and that Sharyland was a third-party beneficiary of those contracts. Finally, the jury found that: (1) C&B, TCB, and Chris were negligent; (2) such negligence was the proximate cause of damages to Sharyland; and (3) liability should be apportioned jointly and severally, at 20% for C&B, 40% for TCB, and 40% for Cris. The jury assessed damages at $1,139,000 and awarded Sharyland attorney's fees in the amount of $510,221.68 through trial, with additional awards of $125,000 should appeals be filed in the court of appeals and the Texas Supreme Court.

### D. Post-Trial Hearings and Entry of Judgment

The trial court conducted post-trial hearings. After hearing arguments of counsel and receiving evidence regarding equitable relief and attorney's fees, the trial court entered final judgment awarding Sharyland monetary damages and attorney's fees against Alton, C&B, TCB, and Cris, but denying Sharyland's claims for injunctive relief and specific performance. All motions for new trial were heard and overruled. All parties appealed from the judgment.

### III. Sharyland's Breach of Contract Claim Against Alton

### A. Governmental Immunity

By its first issue, Alton contends that the court has no jurisdiction over Sharyland's breach of contract claims because it has not waived its governmental immunity. In

---

The jury also found that Alton failed to comply with the following provision—paragraph 5—of the Water Service Agreement:

> The Corporation [Sharyland] agrees to sell and deliver water and/or sewer service to the Member [Alton] and Member agrees to purchase and receive water and/or sewer service from the Corporation, in accordance with the bylaws and rules and regulations of the Corporation as amended from time to time by the Corporation.

response, Sharyland argues Alton's immunity has been waived by an equitable waiver of immunity, by Alton's counterclaim asking the court to declare the contracts between Sharyland and Alton void, and by sections 271.151-.160 of the Texas Local Government Code. *See* TEX. LOCAL GOV'T CODE ANN. §§ 271.151-.160 (Vernon 2005).

### 1. Standard of Review and Applicable Law

Governmental immunity deprives a trial court of subject-matter jurisdiction for lawsuits in which certain governmental units have been sued, unless the governmental unit consents to suit. *See Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004). Whether a trial court has subject-matter jurisdiction is a question of law. *Miranda*, 133 S.W.3d at 226.

In Texas, governmental immunity has two components: (1) immunity from liability, which bars enforcement of a judgment against a governmental entity, and (2) immunity from suit, which bars suit against the entity altogether. *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006). By entering into a contract, a governmental entity necessarily waives immunity from liability, voluntarily binding itself like any other party to the terms of the agreement, but it does not waive immunity from suit. *Id.* Texas courts consistently defer to the legislature to waive immunity from suit because this allows the legislature to protect its policymaking function. *Id.* This is particularly true in the context of contract claims, where "legislative control over [governmental] immunity allows the legislature to respond to changing conditions and revise existing agreements if doing so would benefit the public." *Id.* (quoting *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 854 (Tex. 2002)); *see Catalina Dev. Inc. v. County of El Paso*, 121 S.W.3d 704, 705-

8

06 (Tex. 2003). To ensure that legislative control is not lightly disturbed, a waiver of immunity must be "clear and unambiguous." *Tooke*, 197 S.W.3d at 332-33.

## 2. Equitable Waiver of Immunity by Conduct

Sharyland first asserts that Alton's conduct constitutes an equitable basis on which this Court should hold Alton waived its governmental immunity from suit. Among other things, Sharyland argues that Alton did not simply breach its contractual duties, but through an intentional course of conduct chose to leave leaking sewer lines installed over Sharyland's waterlines in violation of state law and contrary to industry standards and engineering specifications. Sharyland contends that Alton's conduct threatens the safety of the public's water supply and is "a gross and reprehensible dereliction of its duties to its citizens." While Sharyland recognizes that the supreme court has never articulated a circumstance where an equitable waiver of immunity might be appropriate, it urges this Court to fashion a waiver-by-conduct exception in this case.

In *Federal Sign v. Texas Southern University*, the supreme court recognized that "[t]here may be other circumstances where the State may waive its immunity by conduct other than simply executing a contract so that it is not always immune from suit when it contracts." 951 S.W.2d 401, 408 n.1 (Tex. 1997), *superseded by statute on other grounds as stated in Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 593 (Tex. 2001). A year later, while noting that several appellate courts have relied on that language to create a "judicially-imposed, equitable waiver of immunity from suit by conduct," the supreme court reaffirmed "that it is the legislature's sole province to waive or abrogate sovereign immunity." *IT-Davy*, 74 S.W.3d at 856-57 ("Creating a waiver-by-conduct exception would force the State to expend its resources to litigate the waiver-by-conduct

9

issue before enjoying sovereign immunity's protections and this would defeat many of the doctrine's underlying policies."). The supreme court has not provided for the exception urged by Sharyland, and we decline to create one in this case. "We instead follow the supreme court preceden[t] that it is the legislature's sole province to waive sovereign immunity." *My-Tech, Inc. v. Univ. of N. Tex. Health Sci. Ctr.*, 166 S.W.3d 880, 884 (Tex. App.–Dallas 2005, pet. denied) (citing, *e.g., Lubbock County v. Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580, 585 (Tex. 2002) ("It is not the function of a court of appeals to abrogate or modify established precedent.")). Thus, we conclude that Alton's conduct in this case does not constitute an equitable basis upon which this Court could hold that Alton waived its governmental immunity from suit.

### 3. Waiver of Immunity by Filing a Counterclaim

Relying on *Reata Construction Corporation v. City of Dallas*, Sharyland also argues that Alton waived its immunity when it filed its counterclaim for a declaratory judgment. *See* 197 S.W.3d 371, 376-77 (Tex. 2004). In *Reata*, the supreme court held that if a city interjects itself in litigation asserting an affirmative claim for monetary damages, immunity may be partially waived. *Id.* Here, Alton's counterclaim asked that the trial court declare the Water Supply Agreement between Sharyland and Alton void under a variety of theories. Alton made no claim for monetary damages; thus, it did not waive, even partially, its immunity by its counterclaim. *See id.*

### 4. Waiver of Immunity Under Section 271.152

Finally, Sharyland argues Alton's immunity from suit has been waived by the Texas Local Government Code. *See* TEX. LOCAL GOV'T CODE ANN. §§ 271.151-.160. In this case, we agree.

10

The Texas Local Government Code waives a local government's immunity from suit for certain contractual claims. Section 271.152 provides that

> [a] local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter.

*Id.* § 271.152. The statute defines a "contract subject to this subchapter" as "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity." *Id.* § 271.151(2). Sharyland asserts, and Alton concedes, that the agreements in this case involve services. Thus, pursuant to sections 271.151(2) and 271.152, we conclude that the agreements at issue in this case fall within the provisions of the statute because they involve services. *See id.* §§ 271.151(2), 271.152. Thus, Alton's governmental immunity to suit for purposes of adjudicating Sharyland's breach of contract claim has been waived, and we overrule Alton's first issue on this basis.[9]

B. Submission of Jury Issue on
Breach of Paragraph 6 of the Water Supply Agreement

By its second issue, Alton contends that the trial court should not have submitted a jury question based on the alleged breach of paragraph 6 of the Water Supply Agreement.

---

[9] Relying on section 271.153, Alton also argues that because it did not purchase the services from Sharyland and because it was not required to pay any monies to Sharyland, the contracts are not of the type contemplated by the Legislature. *See* TEX. LOCAL GOV'T CODE ANN. § 271.153(a) (Vernon 2005) (limiting damages to "the balance due and owed by the local governmental entity under the contract," "the amount owed for change orders or additional work the contractor is directed to perform by a local governmental entity in connection with the contract," and "interest as allowed by law"); *see also* § 271.153(b) (excluding "consequential damages," "exemplary damages," or "damages for unabsorbed home office overhead"). We address this argument in our discussion of Alton's third issue.

11

## 1. Standard of Review

We review alleged jury charge error under an abuse of discretion standard. *Shupe v. Lingafelter*, 192 S.W.3d 577, 579 (Tex. 2006) (per curiam); *Toles v. Toles*, 45 S.W.3d 252, 263 (Tex. App.–Dallas 2001, pet. denied). The trial court has broad discretion in submitting jury questions as long as the questions submitted fairly place the disputed issues before the jury, *see Toles*, 45 S.W.3d at 263, and the charge is legally correct. *See Hyundai Motor Co. v. Rodriguez*, 995 S.W.2d 661, 664 (Tex. 1999). "A trial court abuses its discretion when it acts arbitrarily and unreasonably, without reference to guiding rules or principles, or misapplies the law to the established facts of the case." *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). This Court will not reverse a judgment based on charge error in the absence of harm, which results if the error "probably caused the rendition of an improper judgment" or "probably prevented the appellant from properly presenting the case to the court of appeals." TEX. R. APP. P. 44.1(a); *see Bed, Bath & Beyond, Inc. v. Urista*, 211 S.W.3d 753, 757 (Tex. 2006); *Harris County v. Smith*, 96 S.W.3d 230, 234-35 (Tex. 2002).

## 2. Allegation that Agreement is Void

Alton first complains that the Water Supply Agreement is void because: (1) it has no term of duration; (2) it abdicates a governmental function; (3) it is unconstitutional; and (4) it lacks consideration. Sharyland argues that Alton has waived this argument. We agree.

Alton filed a declaratory-judgment counterclaim against Sharyland requesting that the trial court declare the Water Supply Agreement void and return the water system and its easements to Alton. Sharyland answered by asserting, among other things, that section

12

1926(b) barred Alton's counterclaim. *See* 7 U.S.C.A. § 1926(b).[10] Sharyland filed a summary judgment motion urging that its affirmative defense barred Alton's counterclaim. *See id.* The trial court agreed and granted Sharyland summary judgment on Alton's counterclaim.

Alton has raised no issue related to the trial court's granting of Sharyland's motion for summary judgment on its counterclaim. *See* TEX. R. APP. P. 38.1(i); *Jacobs v. Satterwhite*, 65 S.W.3d 653, 655-56 (Tex. 2001) (per curiam) (citing *San Jacinto River Auth. v. Duke*, 783 S.W.2d 209, 209-10 (Tex. 1990) (per curiam) (stating that it is a "well-established rule that grounds of error not asserted by points of error or argument in the court of appeals are waived")). Alton has not challenged Sharyland's section 1926(b) affirmative defense, the basis on which the summary judgment was granted. Moreover, Alton acknowledges that it is not appealing its counterclaim. Thus, we conclude that Alton has waived this argument.

### 3. Allegation of Lack of Fair Notice

Alton also contends that a question regarding its alleged failure to comply with paragraph 6 of the Water Supply Agreement should not have been submitted to the jury because Alton did not have fair notice that Sharyland intended to complain about this paragraph until trial and that the error is not harmless. We disagree.

In its pleadings and through its written discovery, Sharyland alleged breach of paragraph 5 of the Water Supply Agreement, which addresses easements "providing for the rights to use, operate, inspect, repair, maintain, replace, remove, enlarge, reconstruct

---

10 Alton does not dispute that Sharyland financed the construction and operation of its retail water and wastewater systems through loans and grants secured through the Farmer's Home Administration and that Sharyland continues to be obligated to repay the federal government.

13

and service the water supply system . . . ."  Over Alton's objection, the trial court submitted an issue on breach of paragraph 6, which addresses the separation distance between the waterlines and the sewer system.  Alton contends that it had been given no notice of Sharyland's intention to submit such an issue and had not been given an opportunity to perform any discovery on the issue.  However, four years before the case was tried, Tim Nicolls, Sharyland's General Manager, testified at his deposition that Sharyland was complaining of a breach of both paragraphs 5 and 6 of the Water Supply Agreement, as well as a breach of the Water Service Agreement.  It is not necessary to supplement responses to written discovery requests if the additional or corrective information is made known to the other party on the record at a deposition.  *See* TEX. R. CIV. P. 193.5(a)(2).  Thus, we conclude that Alton had fair notice and that the trial court did not abuse its discretion in submitting this issue to the jury.

Because the jury's finding that Alton breached paragraph 6 of the Water Supply Agreement supports the jury's verdict and the trial court's judgment against Alton, we need not address Alton's remaining argument that a breach of the Water Service Agreement cannot support the damages sought by Sharyland.  *See* TEX. R. APP. P. 47.1.  We overrule Alton's second issue.

### C.  Damages Sought by Sharyland

In its third issue, Alton contends that Sharyland had no compensable damages and produced no evidence of damages.  Alton also asserts that, if this Court should find that Sharyland has compensable damages, they are not recoverable from Alton because its damages are limited under section 271.153(a).  *See* TEX. LOCAL GOV'T CODE ANN. § 271.153(a).  We agree with this last assertion.

14

Sharyland sought money damages for, among other things, alleged increased costs in operation of its water distribution system, costs to place barriers to mitigate the hazard caused by the defendants, costs associated with increased safety precaution and maintenance measures it takes when repairing its lines, and lost interest on these sums. The charge instructed the jury to consider only "[t]he reasonable cost of the repairs necessary to restore the property to its condition immediately before the injury." On appeal, Sharyland argues that it is being compelled by Alton to perform work to safeguard the water system because Alton refused to install the sewer lines as agreed in the Water Supply Agreement. Based on this argument, Sharyland maintains that section 271.153, as written, allows the damages that the jury awarded. *See id.*

The total amount of money awarded in an adjudication brought against a local governmental entity for breach of a contract subject to chapter 271 is limited to the following:

> (1) the balance due and owed by the local governmental entity under the contract as it may have been amended, including any amount owed as compensation for the increased cost to perform the work as a direct result of owner-caused delays or acceleration;

> (2) the amount owed for change orders or additional work the contractor is directed to perform by a local governmental entity in connection with the contract; and

> (3) interest as allowed by law.

*Id*. In this case, section 271.153(a) does not provide Sharyland an avenue for recovery. *See id.* There is neither a balance due and owed by Alton under the agreements, nor is there any amount due from change orders, additional work, or interest. *See id.* Thus, Sharyland's damages, if any, fall outside the limited damages recoverable under section 271.153(a). *Id.* In addition, to the extent the damages could be considered consequential

15

damages, they are expressly excluded from damages that can be recovered under chapter 271. *See id.* § 271.153(b)(1) (providing that "this subchapter may not include consequential damages"); *see also Tooke*, 197 S.W.3d at 346 (concluding that consequential damages of lost profits were excluded by the statute). Therefore, we sustain Alton's third issue on this basis.

## D. Attorney's Fees

By its fourth issue, Alton contends that Sharyland cannot recover attorney's fees under section 271.159 of the local government code because there was no written agreement between Sharyland and Alton that expressly contracted for such fees. *See* TEX. LOCAL GOV'T CODE ANN. § 271.159 (providing that no attorney's fees shall be awarded to any party unless the local governmental entity has entered into a written agreement that expressly authorizes the prevailing party to recover attorney's fees). Sharyland argues that section 271.159 does not apply retroactively and that under prior law pursuant to Texas Civil Practice and Remedies Code section 38.001 for its breach of contract claim, the award was appropriate. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001 (Vernon 2008). Sharyland also asserts that it was entitled to attorney's fees under the Declaratory Judgment Act (the Act). *See id.* §§ 37.001-.011 (Vernon 2008).

### 1. Attorney's Fees Under Section 38.001

We need not determine the applicability of section 271.159 to Sharyland's breach of contract claim because, even pursuant to section 38.001, Sharyland cannot recover attorney's fees against Alton. Section 38.001(8) permits an award of attorney's fees for a suit based on a written contract. *See* TEX. CIV. PRAC. & REM. CODE ANN. 38.001(8). However, "[t]o recover attorney's fees under [section] 38.001, a party must (1) prevail on

16

a cause of action for which attorney's fees are recoverable, and (2) recover damages. . . ." *Green Int'l v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997). Because of the section 271.153 limitation on damages, Sharyland has recovered no damages in this case. *See* TEX. LOCAL GOV'T CODE ANN. § 271.153. Moreover, to recover attorney's fees under chapter 38, the plaintiff must sue an individual or a corporation. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001. Alton, a municipality, is not considered a corporation even when it is acting in its proprietary function. *See* TEX. LOC. GOV'T CODE ANN. § 5.904(b) (Vernon 2008). Therefore, we conclude the trial court erred in awarding attorney's fees pursuant to section 38.001(8).

### 2. Attorney's Fees Under the Act

Sharyland also contends that the award of attorney's fees was proper under the Act. In a declaratory judgment action, the decision to grant or deny attorney's fees is solely within the discretion of the trial court. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009; *Neeley v. W. Orange-Cove Consol. Indep. Sch. Dist.*, 176 S.W.3d 746, 799 (Tex. 2005); *Wilson v. Chazanow*, 105 S.W.3d 21, 26 (Tex. App.–Corpus Christi 2002, no pet.). The court may award costs and reasonable and necessary attorney's fees as are equitable and just. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009. This Court should not reverse the trial court's decision regarding attorney's fees absent a clear showing that the trial court abused its discretion. *Texstar N. Am. Inc. v. Ladd Petroleum Corp.*, 809 S.W.2d 672, 679 (Tex. App.–Corpus Christi 1991, writ denied).

Sharyland sought a declaration from the trial court that section 1926(b) barred Alton's counterclaim. In its motion for summary judgment, however, Sharyland presented its argument under section 1926(b) as an affirmative defense to Alton's counterclaim, not

as a request for declaratory judgment, and we construe it as such on appeal. Therefore, Sharyland's contention that it pleaded and prevailed on this alleged declaratory judgment action does not support an award of attorney's fees.

Sharyland also asserts that the award of attorney's fees is supported by its declaratory judgment action seeking a declaration from the trial court that the provisions of section 317.13 of the Texas Administrative Code applied to the sewer crossings at issue. *See* 30 TEX. ADMIN. CODE ANN. § 317.13(1)(B). In its summary judgment order, the trial court granted Sharyland declaratory judgment that section 317.13 applied and that the definition of "sewer" included sanitary sewer residential service connections. On appeal, Alton asserts only that the issue of Sharyland's fees in its declaratory judgment hearing is completely irrelevant to the issues in this appeal. Alton does not challenge the declaratory nature of the section 317.13 ruling, and we cannot conclude that there is a clear showing that the trial court abused its discretion in awarding attorney's fees on the basis of this declaratory judgment action. *See Texstar*, 809 S.W.2d at 679.

Sharyland presented testimony of counsel regarding attorney's fees incurred. It did not, however, segregate the fees. Therefore, remand for a determination of the amount of the award properly attributable to the declaratory judgment action is the appropriate remedy. *See First Nat'l Bank v. Anderson Ford-Lincoln-Mercury*, 704 S.W.2d 83, 85 (Tex. App.–Dallas 1985, ref. n.r.e.) (op. on rehr'g) (determining that when it was unclear whether an award of attorney's fees was attributable to a declaratory judgment claim or to an unsuccessful breach of contract claim, remand is required). We sustain Alton's fourth issue as to the fees attributable to the breach of contract claim and overrule it as to the attorney's fees attributable to the declaratory judgment.

18

IV.  Sharyland's Claims Against C&B, TCB, and Cris

A.  Third-Party Beneficiary Status on Breach of Contract Claim

C&B and TCB, by their first issues, and Cris, by its second issue, complain of charge error related to Alton's breach of contract claim against them.  Over objection, the trial court submitted the following question to the jury:

> Was Sharyland Water Supply Corporation a third party beneficiary of any of the following contracts:
>
> A party is a third party beneficiary of a contract if:
>
> (1)    the contracting party intended to secure some benefit to that third party; and
>
> (2)    the contracting parties entered into the contract directly for the third party's benefit.
>
> To qualify as a third party beneficiary a third party must show that it is either a creditor beneficiary or a donee beneficiary.  A third party is a creditor beneficiary if performance under a contract made between others will come to the third party in satisfaction of a legal duty owed the third party by the promisee.  This duty may be a contractual obligation, or other legally enforceable commitment owed to the third party.  A third party is a donee beneficiary if the performance promised under the contract will, when rendered, come to the third party as a pure donation.
>
> You are instructed that in order to claim third party beneficiary status to any contract, the Plaintiff must show that the subject contract contains a clear and apparent intent of the contracting parties to confer third-party beneficiary status upon the Plaintiff, and that the parties entered into the contract directly and primarily for the third party's benefit.

The jury found that Sharyland was a third-party beneficiary of the contracts between Alton and C&B, Alton and TCB, and Alton and Cris.

C&B, TCB, and Cris contend that Sharyland lacks standing to claim under, or to enforce, their respective contracts with Alton because the contracts contain no provisions that the contracting parties intended to confer a direct benefit on Sharyland or any other

third party. They also assert that, in this case, Sharyland's status as a third-party beneficiary to the contracts was a question of law for the trial court to determine, not a question of fact for the jury; therefore, the trial court erred in submitting a question on Sharyland's status as a third-party beneficiary of their respective contracts with Alton.

In response, Sharyland asserts that it was a third-party beneficiary of the contracts, and by submitting the issue to the jury, the trial court impliedly found that the matter of third-party beneficiary status was controverted—that the language of the contract was susceptible to more than one reasonable interpretation regarding the intent of the parties. Based on this alleged ambiguity, Sharyland claims the trial court did not err in submitting a jury question on the issue of Sharyland's status as a third-party beneficiary.

### 1. Standard of Review and Applicable Law

As set out above, "[w]e review the trial court's submission of . . . jury questions under an abuse of discretion standard." *Toles*, 45 S.W.3d 263. We will not reverse a judgment based on charge error in the absence of harm. *See* TEX. R. APP. P. 44.1(a); *Bed, Bath & Beyond*, 211 S.W.3d at 757.

There is a presumption against conferring third-party-beneficiary status on noncontracting parties. *S. Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 306 (Tex. 2007) (per curiam); *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 652 (Tex. 1999); *Ortega v. City Nat'l Bank*, 97 S.W.3d 765, 773 (Tex. App.–Corpus Christi 2003, no pet.) (op. on rehr'g). In deciding whether a third party may enforce or challenge a contract between others, it is the contracting parties' intent that controls. *Lomas*, 223 S.W.3d at 306. The intent to confer a direct benefit upon a third party must be clearly and fully spelled out or enforcement by the third party must be denied. *Id.*; *Stine v. Steward*, 80

20

S.W.3d 586, 589 (Tex. 2002) (per curiam); *MCI Telecomms. Corp.*, 995 S.W.2d at 651; *Ortega*, 97 S.W.3d at 773. If there is any reasonable doubt as to the contracting parties' intent to confer a direct benefit on the third party by way of the specific contract, the third-party beneficiary claim fails. *Ortega*, 97 S.W.3d at 773.

To qualify as one for whose benefit a contract was made, the third party must be either a donee beneficiary or a creditor beneficiary. *MCI Telecomms. Corp.*, 995 S.W.2d at 651; *Ortega*, 97 S.W.3d at 773. A person is a donee beneficiary if the performance promised will come to him as a pure donation. *MCI Telecomms. Corp.*, 995 S.W.2d at 651. If performance will come to satisfy a duty or legally enforceable commitment owed by the promisee, then the third party is considered a creditor beneficiary.[11] *Id*.; *Ortega*, 97 S.W.3d at 774. A third party is not a creditor beneficiary, however, unless the contract shows both the intent to confer a benefit on the third party and the intent that the third party has the right to enforce the contact. *Ortega*, 97 S.W.3d at 774; *MJR Corp. v. B & B Vending Co.*, 760 S.W.2d 4, 16 (Tex. App.–Dallas 1988, writ denied). "Unless both intents were exhibited on his behalf, the third party remains no more than an incidental beneficiary." *MJR Corp.*, 760 S.W.2d at 16. And, incidental benefits that may flow from a contract to a third party do not confer the right to enforce the contract. *Lomas*, 223 S.W.3d 306.

Furthermore, "the fact that a person is directly affected by the [contracting] parties' conduct, or that he 'may have a substantial interest' in a contract's enforcement, does not

---

11 A creditor beneficiary may be defined as a third person to whom the bargain-seeking party (the "promisee" or contract party exacting the particular stipulation) has an indebtedness, contractual obligation, or other legally enforceable commitment to the third party which commitment the bargain-seeker wishes to discharge or protect by stipulating that the bargain-giver (the opposing contract party or "promisor" concerning the particular stipulation) shall deliver a contract performance to the third party. *MJR Corp. v. B & B Vending Co.*, 760 S.W.2d 4, 11 (Tex. App.–Dallas 1988, writ denied).

make him a third party beneficiary." *Loyd v. ECO Res., Inc.*, 956 S.W.2d 110, 134 (Tex. App.–Houston [14th Dist.] 1997, no writ) (quoting *Merrimack Mut. Fire Ins. Co. v. Allied Fairbanks Bank*, 678 S.W.2d 574, 577 (Tex. App.–Houston [14th Dist.] 1984, writ ref'd n.r.e.) ("The fact that the mortgagor's liability for attorney's fees was directly affected by the attorney's fee contract had no effect on the court's holding that the mortgagor had no standing to contest the attorney's fee contract.")). Finally, "general beneficence does not create third-party rights." *Lomas*, 223 S.W.3d at 307; *Ortega*, 97 S.W.3d at 773 ("the contracting parties must intend to secure a benefit for the *specific* third party bringing the action; it is not enough that the contract is designed to benefit a broad class of people, of whom the third-party might be a member"); *see Stine*, 80 S.W.3d at 589 ("A third party may recover on a contract made between other parties only if the parties intended to secure a benefit to *that* third party . . . ." (emphasis added)).

"Our analysis of the third-party beneficiary issue requires us to interpret the contract . . . ." *MCI Telecomms. Corp.*, 995 S.W.2d at 651. If a contract can be given a certain or definite legal meaning, then it is not ambiguous. *Coker*, 650 S.W.2d at 393. "When a contract is not ambiguous, the construction of the written instrument is a question of law for the court." *MCI Telecomms. Corp.*, 995 S.W.2d at 651 (citing *Coker*, 650 S.W.2d at 393); *see J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). If a contact is susceptible to more than one reasonable interpretation, it is ambiguous. *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005) (per curiam). Lack of clarity, however, does not create an ambiguity, and not every difference in the interpretation of a contract amounts to an ambiguity. *Universal Health Serv., Inc. v. Renaissance Women's Group, P.A.*, 121 S.W.3d 742, 746 (Tex. 2003) (quoting *Forbau v. Aetna Life Ins. Co.*, 876

22

S.W.2d 132, 134 (Tex. 1994)). "A court may conclude that a contract is ambiguous in the absence of such a pleading by either party." *Sage St. Assocs. v. Northdale Constr. Co.*, 863 S.W.2d 438, 445 (Tex. 1993); *see Royal Maccabees Life Ins. Co. v. James*, 146 S.W.3d 340, 347 (Tex. App.–Dallas 2004, pet. denied) (op. on rehr'g) (explaining that a court may determine ambiguity as a matter of law for the first time on appeal).

### 2. Third-Party Beneficiary Analysis

Sharyland argues that by undertaking their contractual obligations with Alton, C&B, TCB, and Cris expressly agreed, as their core obligations, to protect Sharyland's waterlines as required under the contract documents, including certain plans and specifications. Sharyland argues that these plans and specifications were developed for its "sole benefit" and that the only "person" to be benefitted from these particular plans and specifications detailing the manner of installing the sewer lines in proximity to the waterline was Sharyland. It claims that the contracts were intended to protect Sharyland's waterlines from being contaminated by sewage.

Alton engaged the services of C&B for the construction management of Alton's waste water collection system, TCB for the project's engineering and inspection, and Cris for the construction of the project. The contracts, executed only by representatives of Alton and C&B, TCB, or Cris, do not reference any third parties and do not indicate any intent to discharge any obligation owed to Sharyland, specifically, or to any other third party. The contracts do not clearly and fully spell out the contracting parties' intent to confer a direct benefit specifically on Sharyland or on any other third party and do not name or generally reference Sharyland as part of a group. The contracts describe only the duties and obligations agreed to between the contracting parties. They are devoid of any third-party

23

benefit language. They lack language specifically naming Sharyland as a beneficiary or providing Sharyland with the right to sue to enforce the contract.[12]

Without more in the contracts specifically showing both the intent to confer a benefit on Sharyland and the intent that Sharyland has the right to enforce the contact, Sharyland's argument only implies third-party beneficiary status. And, Texas law as articulated by the Texas Supreme Court and by this Court is clear: a stranger to a contract cannot become a third-party beneficiary by implication. *See MCI Telecomms. Corp.*, 995 S.W.2d at 651; *Ortega*, 97 S.W.3d at 773. Moreover, the fact that Sharyland may have been directly affected by the contracting parties' conduct or may have a substantial interest in the contract's enforcement does not make Sharyland a third-party beneficiary. *See Loyd*, 956 S.W.2d at 134. Finally, although Sharyland and others may benefit generally from aspects of the contracts, including compliance with all federal, state, and local laws, ordinances, regulations, professional guidelines, and the parties' plans and specifications, "general beneficence does not create third-party rights." *Lomas*, 223 S.W.3d at 307. If it did, "every Texan could challenge or seek to enforce any government contract and the presumption against third-party-beneficiary agreements would disappear." *Id.*

---

12 For example, the agreement between Alton and TCB includes a remedies section that contemplates disputes between Alton and TCB only. The remedies section does not address enforcement of disputes by Sharyland or by any other third party. Paragraph 16 of the agreement provides the following:

> Unless otherwise provided in this Agreement, all claims, counterclaims, disputes, and other matters in question between [Alton] and [TCB] arising out of or relating to this Agreement or the breach of it will be decided by arbitration if the parties mutually agree, or in a court of competent jurisdiction within . . . Texas. Venue . . . shall be in Hidalgo County, Texas.

Sharyland argues that the remedies section referred to by TCB does not foreclose Sharyland from enforcing the contract as a third-party beneficiary because it is prefaced by the phrase "unless otherwise provided in this Agreement." However, Sharyland does not refer this Court to contractual language that provides otherwise.

Sharyland does not contend that it could recover as a donee beneficiary; rather it appears to argue that it is a creditor beneficiary based on the contractual obligations owed to Sharyland by Alton as set out in the Water Supply Agreement and the Water Service Agreement. Sharyland asserts that "[i]t is clear that the [contracts], including the plans and specifications, for the project, fulfilled a legal obligation by Alton to Sharyland to construct the sewer line crossings in the manner required by law, with the sewer lines, wherever possible, crossing underneath the waterlines."

This argument fails because a third party is not a creditor beneficiary unless the contracts at issue show both the intent to confer a benefit on the third party and the intent that the third party has the right to enforce the contact. *See Ortega*, 97 S.W.3d at 774; *MJR Corp.*, 760 S.W.2d at 16. As noted above, neither intent was exhibited on Sharyland's behalf. Moreover, the contractual documents do not acknowledge a debt or legal obligation owed by Alton to Sharyland. The agreements do not say directly or indirectly that C&B, TCB, or Cris would pay a debt or assume a legal obligation owed by Alton to Sharyland. *See MJR Corp.*, 760 S.W.2d at 11. Therefore, we find Sharyland's argument unpersuasive and conclude that Sharyland remains no more than an incidental beneficiary. *See id.* at 16.

The contracts at issue in this case can be given a certain legal meaning—that Sharyland is not a third-party beneficiary—and are not susceptible to more than one reasonable interpretation. Therefore, they are not ambiguous. *See MCI Telecomms. Corp.*, 995 S.W.2d at 651; *Coker*, 650 S.W.2d at 393. Because the construction of an unambiguous contract is a question of law for the court, *see MCI Telecomms. Corp.,* 995

S.W.2d at 651, we conclude the trial court abused its discretion and erred when it submitted the third-party beneficiary question to the jury as a fact issue.

### 3. Harm Analysis

Having concluded the trial court erred, we will reverse only if the error "was reasonably calculated to and probably did cause the rendition of an improper judgment." *Bed, Bath & Beyond*, 211 S.W.3d at 757. Sharyland argues that the error, if any, was harmless. It reasons that, had the question not been submitted to the jury, the trial court would have necessarily decided as a matter of law that Sharyland was a third-party beneficiary. The jury would have been so instructed and would have been asked to answer the questions on breach and damages. Based on the analysis above, we disagree with this reasoning.

In this case, submission of the third-party beneficiary question allowed the jury to incorrectly find that Sharyland was a third-party beneficiary. This, in turn, allowed the jury to reach the question of breach and resulting damages. If the third-party beneficiary question had not been posed, and had been decided correctly by the trial court, the jury would not have found C&B, TCB, or Cris liable for breach of contract. We conclude, therefore, that the error was reasonably calculated to and probably did cause the rendition of an improper judgment. *See id*.

We sustain C&B's and TCB's first issues and Cris's second issue. Having so concluded, we need not address appellants' claims that the evidence is legally and factually insufficient to support the jury's finding that Sharyland was a third-party beneficiary or that C&B, TCB, and Cris breached their respective contracts with Alton as they are not dispositive to this appeal. *See* TEX. R. APP. P. 47.1.

26

## B. Negligence Claim

C&B's and TCB's third issues and Cris's fifth issue assert that the economic loss rule bars Sharyland's negligence claim because Sharyland claimed economic damages but failed to claim and prove property (water main) damages. Because this issue is dispositive of Sharyland's negligence claim, we address it first.

"Texas courts have applied the economic loss rule to preclude tort claims between parties who are not in contractual privity." *Sterling Chems., Inc. v. Texaco Inc.*, 259 S.W.3d 793, 797 (Tex. App.–Houston [1st Dist.] 2007, pet. denied). "'Economic loss' has been defined as 'damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—without any claim of personal injury or damage to other property. . . .'" *Thomson v. Espey Huston & Assocs.*, 899 S.W.2d 415, 421 (Tex. App.–Austin 1995, no writ) (quoting *2314 Lincoln Park West Condo. Ass'n v. Mann, Gin, Ebel & Frazier, Ltd.*, 555 N.E.2d 346, 385 (Ill. 1990)). In tort cases where there is an absence of privity of contract or, as in this case, an absence of third-party beneficiary status, economic damages are not recoverable unless they are accompanied by actual physical injury or property damage.[13] *See Express One Int'l, Inc. v. Steinbeck*, 53 S.W.3d 895, 899 (Tex. App.–Dallas 2001, no pet.); *Coastal Conduit & Ditching, Inc. v. Noram Energy Corp.*, 29 S.W.3d 282, 288-89 (Tex. App.–Houston [14th Dist.] 2000, no pet.); *Hou-Tex, Inc. v. Landmark Graphics,* 26 S.W.3d 103, 107 (Tex. App.–Houston [14th Dist.] 2000,

---

13  In its cross-issue on equitable relief, Sharyland speculates, without citation to the record or authority, that raw sewage leaks from Alton's sewer lines would subject Sharyland's employees to increased risk of harm when repairing broken water lines and subject Sharyland's members to physical injury and death due to water borne contamination originating and emanating from Alton's sewer lines. *See* TEX. R. APP. P. 38.1(i). In this issue regarding economic damages, however, Sharyland makes no claim of personal injury; therefore, the issue of whether a personal injury has occurred, either to employees or customers, is not before us.

27

no pet.).  Thus, the threshold issue in this case is whether Sharyland suffered property damage, such that the economic loss rule will not bar its recovery.  *See Hou-Tex, Inc.*, 26 S.W.3d at 107.

In its live pleading, Sharyland sought damages for "increased costs in operation and costs to place barriers to mitigate the hazard caused by Defendants" and for "costs associated with increased safety precaution and maintenance measures it takes when repairing its lines."  In determining the amount of damages that were proximately caused by the parties' negligence, the jury was instructed to consider only "[t]he reasonable cost of the repairs necessary to restore the property to its condition immediately before the injury."  On appeal, Sharyland asserts that contamination of the waterline is not a remote theoretical injury and the damages required to protect the waterlines are not remote, contingent, speculative, or conjectural as argued by TCB.

Sharyland contends that economic loss is not sought in this case.  It alleges that the parties' negligence in improperly installing the sewer system has caused property damage to its waterlines.  Specifically, Sharyland claims that its waterlines have been subjected to raw sewage leaking from the sewer lines.[14]  Sharyland argues that because it must take action to protect its waterlines from the sewage flowing in the sewer lines placed above the waterlines, its property has been damaged.  It asserts that the continued and repeated threat of leaks occurring imposes a continuous and unabated risk to Sharyland's system. It argues that because of the close proximity of Alton's sewer lines to Sharyland's waterlines, Sharyland must take steps to prevent contamination both before and after a

---

14  As a result of investigative excavations, one leak was found in one of the excavated sewer lines. The leak was caused by a rolled gasket in the coupling.

28

break or leak is found in the waterlines and must repair its waterlines to bring them back into compliance with state laws and regulations. According to Sharyland, based on the excavations of various areas of its waterlines to determine the impact of the sewer lines on the waterlines, the evidence shows that approximately sixty of the sixty-six excavated sewer service connections inappropriately cross Sharyland's waterlines. It argues that the jury properly awarded Sharyland past damages for previous diagnostic activities and future damages for a remedial course of action to encase and protect the waterlines from contamination. Essentially, Sharyland argues there is property damage because the leaking sewage has or will damage the waterlines necessitating remedial actions; C&B, TCB and Cris assert that this is not property damage.

Neither party has provided this Court with any authority for the definition of property damage in the context of the economic-loss rule, and we find none. In determining whether Sharyland's claimed costs associated with increased safety precautions, maintenance measures, and repairs to its waterlines to bring them into compliance with state laws and regulations constitute property damage, we have considered the following case law defining property damage in other contexts: (1) *Trans-Gulf Corp. v. Performance Aircraft Servs., Inc.*, 82 S.W.3d 691, 695 (Tex. App.–Eastland 2002, no pet.) (holding that the economic loss rule barred a claim by an aircraft purchaser against a repair company for additional costs incurred because of a faulty fuel tank repair); (2) *Blanche v. First Nationwide Mortgage Corp.*, 74 S.W.3d 444, 453 (Tex. App.–Dallas 2002, no pet.) (concluding that the denial of a loan causing credit damage and the payment of higher interest rates are "economic damages not recoverable in a simple negligence action"); (3) *Express One Int'l, Inc.*, 53 S.W.3d at 898-99 (holding that the economic loss rule barred

a negligence claim by an employer against a former employee for litigation-related costs it incurred because of a statement posted by the former employee on an internet bulletin board); (4) *Coastal Conduit & Ditching*, 29 S.W.3d at 385-90 (concluding that a contractor's claim for increased location costs because of a gas company's failure to properly lay or mark pipelines was barred by the economic loss rule); and (5) *Amarillo Nat'l Bank v. Terry*, 658 S.W.2d 702, 704 (Tex. App.–Amarillo 1983, no writ) (concluding that the bank's loss caused by minor's unauthorized withdrawals constitutes economic loss and not property damage). *See also Zurich Am. Ins. Co. v. Hughes*, No. 11-05-00044-CV, 2006 Tex. App. LEXIS 6037, **4-10 (Tex. App.–Eastland July 13, 2006, pet. denied) (mem. op.) (examining case law defining property damage in other contexts and determining, in a summary judgment proceeding, that there was no actual property damage and that the economic loss rule barred a subrogation claim).

Appellate courts have also held that property damage ordinarily entails physical destruction of property. *See Murray v. Ford Motor Co.*, 97 S.W.3d 888, 892 (Tex. App.–Dallas 2003, no pet.) ("A plaintiff could recover in tort . . . for physical damage the defective product causes to 'other property.'"); *Thomson*, 899 S.W.2d at 422 (concluding, to the extent the alleged inadequacies in the engineering services caused property damage to other parts of the apartment complex beyond the subject of the contract itself, Thomson also had a tort claim). Other courts have held that property damage requires actual damage to tangible property and not mere economic loss or loss of economic opportunity. *See, e.g., Mfrs. Auto Leasing, Inc. v. Autoflex Leasing, Inc.*, 139 S.W.3d 342, 348 (Tex. App.–Fort Worth 2004, pet. denied); *Spangler v. Jones*, 861 S.W.2d 392, 398 (Tex. App.–Dallas 1993, writ denied) (en banc).

From these cases it is clear that property damage cannot consist merely of damage to an intangible asset or increased operational costs. Instead, some physical destruction of tangible property must occur. Based on this determination, we conclude that Sharyland has not suffered property damage. The sewer service lines have not corroded the waterlines. There is no evidence of physical damage to the waterlines, nor is there evidence that the water flowing through the water mains has been contaminated because of sewage leaks. Thus, Sharyland neither pleaded nor offered evidence of an actual injury or property damage to its waterlines or to the water that flows through the waterlines. Sharyland seeks compensation only for economic damages including the cost associated with protecting, maintaining, and repairing its waterlines. Because Sharyland has not identified any property damage that it has sustained as a result of the sewer line being laid above its waterlines, we conclude that the economic loss rule bars Sharyland's negligence claim against C&B, TCB, and Cris, parties with which it is not in contractual privity. We sustain C&B's and TCB's third issues and Cris's fifth issue.

## C. Joint and Several Liability and Attorney's Fees

By C&B's ninth and tenth issues, TCB's seventh and eighth issues, and Cris's first and sixth issues, the parties contend that the trial court erred in imposing joint and several liability and awarding attorney's fees against them. We agree. Having concluded that Sharyland is not a third-party beneficiary of the respective contracts between Alton and C&B, TCB, and Cris, and that the economic loss rule bars Sharyland's negligence claim, we conclude that the trial court erred in rendering a judgment which imposed joint and several liability against C&B, TCB, and Cris for damages and in awarding attorney's fees against C&B, TCB, and Cris. We sustain C&B's ninth and tenth issues, TCB's seventh and

31

eighth issues, and Cris's first and sixth issues. Because a professional negligence claim requires privity of contract, *see Ervin v. Mann Frankfort Stein & Lipp CPAS, LLP*, 234 S.W.3d 172, 182-83 (Tex. App.–San Antonio 2007, no pet.), we also sustain C&B's seventh issue urging that the trial court erred by entering judgment against it based upon a claim of professional negligence.

Finally, the remaining issues brought by C&B, TCB, and Cris are not dispositive of this appeal, and we need not address them. *See* TEX. R. APP. P. 47.1.

## V. Sharyland's Claim for Equitable Relief Against Alton

By a single issue, cross-appellant Sharyland contends that the trial court erred in failing to grant equitable relief, in lieu of the monetary damages awarded by the jury against Alton.[15] Sharyland asserts that the equities weigh heavily in favor of the granting of a

---

15 The judgment sought by Sharyland included the following equitable relief:

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that specific performance of the Water Supply Agreement and Water Service Agreement be granted and . . . Alton . . . [is] ordered to excavate each sewer pipe lateral constructed in the City of Alton/City of McAllen Wastewater Improvements Project where it crosses [Sharyland's] waterline and install the sewer pipe lateral in the following manner:

    A.    With an absolute minimum distance of six (6) inches between outside diameters of the crossing sewer pipe lateral and the [Sharyland's] waterline; and

    B.    With the sewer pipe lateral being located below the waterline where possible; and

    C.    With the sewer pipe lateral being constructed of a continuance section of pipe, without joints or couplings, from a point beginning nine (9) feet from the [Sharyland's] waterline on one side to a point being nine (9) feet from the [Sharyland's] waterline on the opposite side of the waterline; or

    D.    In lieu of conforming with paragraph C, immediately above, the crossing sewer pipe may be encased in a joint of 150 psi pressure class pipe at least eighteen (18) feet long and two (2) nominal sizes larger than the crossing sewer pipe lateral, and in such case the space around the carrier pipe shall be supported at minimum five (5) feet intervals with spacers or be filled to the spring line with washed sand and this encasement pipe shall be centered on the

32

permanent injunction preventing Alton from operating the sewer lines as constructed and the ordering of specific performance of the Water Service Agreement and the Water Supply Agreement in the form of remediation—that is, reconstruction or relocation of the residential service connections such that they cross under Sharyland's water lines or are otherwise in accordance with section 317.13. Sharyland contends that remediation would have been: (1) less disruptive to the potable water supply; (2) more protective of human health because there would have been essentially no risk of contamination of water delivery to customers in the area; and (3) more economical because the cost of specific performance would be less than the monetary damages awarded to Sharyland by the jury.

## A. Standard of Review

"Specific performance is an equitable remedy that rests in the sound discretion of the trial court." *Am. Apparel Prod., Inc. v. Brabs, Inc.*, 880 S.W.2d 267, 269 (Tex. App.–Houston [14th Dist.] 1994, no writ). The issuance or denial of a permanent injunction is also reviewed for abuse of discretion. *Operation Rescue - Nat'l v. Planned Parenthood of Houston and S.E. Tex., Inc.*, 975 S.W.2d 546, 560 (Tex. 1998). The trial court abuses its discretion when it acts arbitrarily and unreasonably, without reference to guiding rules

---

crossed waterline and both ends sealed with cement grout or a manufactured seal;

within sixty (60) days of the date of the judgment, and to continue such actions diligently until achieving complete compliance with this order, but in no event shall such actions take more than one hundred eighty (180) days to achieve complete compliance with this order.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that . . . Alton [is] commanded, beginning no later than one hundred eighty (180) days from the date of this judgment, to desist and refrain from allowing sewage to pass through all sewer pipe laterals where they cross over [Sharyland's] waterline until the sewer lines are excavated and unless the sewage pipe laterals are constructed as ordered in subparagraphs A, B, C and D above.

33

or principles, or misapplies the law to the established facts of the case. *Downer*, 701 S.W.2d at 241-42.

### B. Analysis

### 1. Unauthorized Action

Sharyland's claims for injunctive relief and for remediation to bring the sewer lines into compliance with bylaws and rules and regulations of the corporation and with state regulations arguably fit within the scope of suits to remedy an unlawful or unauthorized action—relief that is not subject to governmental immunity. *See Dir. of the Dep't of Agric. and Env't v. Printing Indus. Ass'n.*, 600 S.W.2d 264, 265-66 (Tex. 1980). However, the unlawful or unauthorized action for which immunity does not apply is an action performed by a state official, not the State. *See id*.; *cf. City of Elsa v. M.A.L.*, 226 S.W.3d 390, 392 (Tex. 2007) (quoting *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 144, 149 (Tex. 1995) (holding that "suits for injunctive relief" may be maintained against governmental entities to remedy violations of the Texas Constitution)). "This is because suits to compel state officers to act within their official capacity do not attempt to subject the State to liability." *IT-Davy*, 74 S.W.3d at 855. "In contrast, . . . suits . . . seeking to establish a contract's validity, to enforce performance under a contract, or to impose contractual liabilities are suits against the State." *Id*. "That is because such suits attempt to control state action by imposing liability on the State. Consequently, such suits cannot be maintained without legislative permission." *Id.* at 856.

In this instance, Sharyland's claim for specific performance and injunctive relief under a contract is not against a state officer. Sharyland seeks, through its equitable claim, to enforce performance under a contract against Alton and thus "control state action" by

34

imposing liability on Alton. *See id*. Sharyland cannot pursue an equitable claim regarding an unauthorized act against Alton without legislative permission. Because no such permission has been given, governmental immunity precludes Sharyland's claim. *See id.* (citations omitted). Therefore, we conclude that the trial court did not abuse its discretion in denying Sharyland equitable relief on this basis.

## 2. Adequate Remedy

"It is a fundamental rule of equity that a court will not grant specific performance unless it is shown that an adequate remedy does not exist at law." *American Housing Res., Inc. v. Slaughter*, 597 S.W.2d 13, 15 (Tex. Civ. App.–Dallas 1980, writ ref'd n.r.e.); *see Cardinal Health Staffing Network v. Bowen*, 106 S.W.3d 230, 235 (Tex. App.–Houston [1st Dist.] 2003, no pet.) (en banc) ("An adequate remedy at law is one that is as complete, practical, and efficient to the prompt administration of justice as is equitable relief."). Cross-appellant Sharyland claims that the legal remedy of damages for breach of contract is not as complete, practical, prompt, and efficient as the requested equitable remedies. Cross-appellee Alton asserts that Sharyland had an adequate remedy in its breach of contract action tried to a jury. We agree.

Sharyland does not dispute that Alton completed the construction of the sewer lines—that Alton performed the contract. Rather, the dispute is over *how* Alton constructed the sewer lines—*how* Alton performed the contract. Sharyland is asking that Alton "fix" its breach through remediation. It is not clear to this Court how Sharyland's equitable claim for relief is different, except in the language used, from the breach of contract claim Sharyland asserted at trial against Alton. We see no distinction between Sharyland's claim in equity for remediation of the sewer lines and its claim for breach of contract. Even when

35

couched as equitable relief, Sharyland's request is for the expenditure of money—money Alton would spend in the remediation process, and we have already concluded, under its breach of contract action, that Sharyland's compensable damages are not recoverable from Alton because its damages are limited under section 271.153(a). *See* TEX. LOCAL GOV'T CODE ANN. § 271.153(a); *cf. Tex. S. Univ. v. Araserve Campus Dining Servs.*, 981 S.W.2d 929, 935 (Tex. App.–Houston [1st Dist.] 1998, pet. denied) ("And since appellants requested equitable relief in the form of an order reinstating them to their jobs, rather than monetary damages, the remedy sought was a permissible one."); *Alcorn v. Vaksman*, 877 S.W.2d 390, 404 (Tex. App.–Houston [1st Dist.] 1994, writ denied) (en banc) (providing that unlike suits for monetary damages, suits against the State seeking equitable remedies for constitutional violations are allowed without the State's consent).

While Sharyland has argued that the comparative advantages of the equitable remedy outweigh those of the legal remedy and while it may now argue that the remedy is not adequate because its damages were limited by the legislature, we conclude that Sharyland had an adequate legal avenue through which to pursue its breach of contract claims, an adequate remedy provided for by the legislature "that is as complete, practical, and efficient to the prompt administration of justice as is equitable relief." *See Bowen*, 106 S.W.3d at 235. Therefore, under the facts of this case, we further conclude that the trial court did not abuse its discretion in denying Sharyland's claims for equitable relief on this basis.

Accordingly, we overrule cross-appellant Sharyland's sole issue.

## VI. Conclusion

We affirm the judgment of the trial court on Sharyland's breach of contract claim against Alton; however, we reverse and render judgment that damages and attorney's fees awarded against Alton on this breach of contract claim are not recoverable. We also reverse and remand to the trial court the award of attorney's fees for a determination of the amount of the award properly attributable to Sharyland's declaratory judgment action against Alton. We reverse and render judgment that Sharyland take nothing for damages and attorney's fees on its contract claims and its negligence claims against C&B, TCB, and Cris. Finally, we affirm the trial court's denial of Sharyland's request for equitable relief as against Alton.

NELDA V. RODRIGUEZ
Justice

Opinion delivered and filed this
25th day of November, 2008.