

# NUMBER 13-09-00212-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

| | |
|---|---|
| **KANSAS CITY SOUTHERN AND THE TEXAS MEXICAN RAILWAY COMPANY,** | **Appellants,** |
| **v.** | |
| **PORT OF CORPUS CHRISTI AUTHORITY OF NUECES COUNTY, TEXAS,** | **Appellee.** |

## On appeal from the 319th District Court of Nueces County, Texas.

# O P I N I O N

## Before Chief Justice Valdez and Justices Rodriguez and Garza
## Opinion by Justice Garza

This is an appeal from a final judgment granting an application for temporary injunction and a motion to stay arbitration. Appellants, Kansas City Southern ("KCS") and the Texas Mexican Railway Company ("Tex Mex"), contend that the trial court erred in granting the application and motion filed by appellee, the Port of Corpus Christi Authority of Nueces County, Texas ("PoCCA"). By four issues, KCS and Tex Mex argue that: (1) the trial court erred by failing to issue additional and amended findings of fact and conclusions of law; (2) PoCCA's sovereign immunity has been waived by certain provisions of the Texas Local Government Code and Texas Water Code; (3) the claims at issue are

covered by binding arbitration agreements; and (4) PoCCA waived its sovereign immunity as to attorney's fees by filing a declaratory judgment action.  We affirm.

## I. BACKGROUND

The underlying dispute arose from PoCCA's demolition of the Tule Lake Lift Bridge, a moveable road and rail bridge built in the 1950s that connected the north and south sides of the ship channel servicing the Port of Corpus Christi.  In 1960, Tex Mex and two other common carrier railroads entered into an agreement with the City of Corpus Christi, Nueces County, and Nueces County Navigation District No. 1.  That agreement, entitled "Primary Agreement," provided in part that the various rail carriers would operate and maintain the rail facilities at the Port on an annually rotating basis.  In exchange, the navigation district[1] would provide the rail carriers with free and equal access to the Port's facilities, including the Tule Lake Lift Bridge, without charge.  The 1960 Primary Agreement did not contain an arbitration clause.

Subsequently, in 1997, the rail carriers entered into additional agreements with PoCCA, including a "Joint Operating Agreement" which created the Port of Corpus Christi Railroad Association in order to provide what PoCCA describes as "an economical common carrier switching service through a third-party contractor selected by [PoCCA]." The Joint Operating Agreement included a promise by PoCCA to provide to the rail carriers "equal rights and privileges . . . of joint use and operations over the Tule Lake Lift Bridge and railroad trackage located thereon without payment of any rental or fee."  The Joint Operating Agreement also stated in part that maintenance of the Tule Lake Lift Bridge would be provided by Nueces County and maintenance of the railroad trackage located on the bridge would be provided by PoCCA.

Another agreement, entitled the "Second Corpus Christi Joint Track Agreement," was executed in 1997 in order to define the rights and responsibilities of the various rail

---

[1] In 1981, Nueces County Navigation District No. 1 was renamed by the legislature as the Port of Corpus Christi Authority of Nueces County, Texas.

carriers with respect to the Port facilities.  In particular, this agreement defined which parties would have control of operations and were responsible for maintenance with respect to portions of track located on Port property known as the "Savage Lane Line" and the "MoPac Connection."  The Joint Track Agreement provided, in part, that Tex Mex would "at all times" have management rights and control of operations over "SL-3" and "SL-4," referring to segments of the Savage Lane Line precisely defined in the agreement.  This agreement also provided in part that "[m]aintenance of . . . [t]hat portion of SL-2 [another defined segment of the Savage Lane Line] outside [Union Pacific's] right-of-way, SL-3, [the PoCCA]-owned portion of [MoPac Connection] . . . [and] SL-4 shall be performed by Tex Mex."

Both the 1997 Joint Operating Agreement and the 1997 Joint Track Agreement included broad arbitration clauses.  The Joint Operating Agreement provided:

> In the event any disagreement shall arise between any two or more of the parties hereto as to the meaning of any provision hereof, or as to any matter arising under this agreement . . . or in the event any such disagreement shall arise between any of the parties hereto on the one hand and [PoCCA] on the other hand, then, upon the written request of any party involved on either side of such disagreement, the matter in controversy shall be submitted to three disinterested arbitrators . . . to be appointed as hereinafter provided.

The Joint Track Agreement stated:

> In case any disagreement shall arise between two or more of the parties hereto relative to the construction or interpretation of any part of this agreement, or concerning the observance or performance of any of its terms or conditions, or as to any other matter of dispute arising under this agreement, then such question shall be submitted to the arbitrament of persons . . . to be chosen as follows . . . .

By the 1990s, the Tule Lake Lift Bridge had become antiquated and was in such a state of disrepair that PoCCA determined "it was dangerous, no longer functional and should be replaced."[2]  In order to preserve the rail carriers' access to the north side of the

---

[2] According to KCS, the primary motivation for PoCCA to remove the Tule Lake Lift Bridge was the fact that large oil tankers could not easily pass through the bridge's relatively narrow opening.  To support this contention, KCS points to a 2007 presentation by PoCCA to its governing commission supporting removal of the bridge, in which a large oil tanker's passage through the bridge opening is likened to "[t]hreading the eye of the needle."  PoCCA denies that the accommodation of large oil tankers was a reason for the bridge's removal.

ship channel, PoCCA constructed the Joe Fulton International Trade Corridor (the "Fulton Corridor"), which consisted in part of rail trackage extending the full length of the north side of the ship channel, thereby linking the south and north sides of the ship channel by circumventing the channel altogether. The Fulton Corridor trackage was put into service in 2007. Subsequently, PoCCA removed the span of the Tule Lake Lift Bridge, and on April 11, 2008, it demolished the remaining lifting towers.

On September 26, 2008, KCS[3] sent a letter to PoCCA demanding arbitration of claims arising from the failure to maintain and the eventual demolition of the Tule Lake Lift Bridge. Specifically, KCS asserted that the Port breached the 1960 and 1997 agreements by failing to properly maintain the bridge and its trackage and by failing to provide free, open, and equal access to the bridge for as long as Tex Mex desired. KCS would later argue that it suffered "direct damages" as a result of the bridge's removal, in that: (1) it must now "travel a long circuitous route" to gain access to the Port's Joint Yard and Common Interchange Yard, causing "additional direct expenses for added fuel, locomotive use and crew time"; and (2) in order to get to the north side of the Port, it must now use tracks belonging to Union Pacific and must pay trackage fees to Union Pacific for such use.

In response to the arbitration demand, PoCCA filed an application for temporary injunction and motion to stay arbitration with the trial court on October 22, 2008. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.023(a) (Vernon 2005) (providing that "[a] court may stay an arbitration commenced or threatened on application and a showing that there is not an agreement to arbitrate"). In its petition, PoCCA sought injunctive and declaratory relief, contending that there is no arbitrable dispute for the following reasons: (1) there was no arbitration clause in the 1960 Primary Agreement; (2) KCS was not a party to either the Primary Agreement or the 1997 Joint Operating Agreement; (3) PoCCA was not responsible for maintenance of the Tule Lake Lift Bridge under the Joint Operating

---

[3] Tex Mex became a wholly-owned subsidiary of KCS on January 1, 2005. In 2006, the federal Surface Transportation Board approved Tex Mex's assignment of its trackage and operating rights to KCS. Appellants will be collectively referred to as "KCS" unless otherwise indicated.

4

Agreement; (4) the Joint Operating Agreement "does not provide for arbitration of a dispute related to the removal" of the bridge; and (5) PoCCA "is immune from suit or arbitration" under the principle of sovereign immunity.

On November 11, 2008, KCS answered, arguing in part that: (1) PoCCA was obligated under the Joint Operating Agreement to provide free and equal access to the bridge and to maintain the trackage on the bridge; (2) the question of whether the dispute arose under the 1997 Joint Operating Agreement is for the arbitrators to decide; and (3) PoCCA's sovereign immunity has been waived pursuant to chapter 271 of the Texas Local Government Code. *See* TEX. LOC. GOV'T CODE ANN. §§ 271.151-.160 (Vernon 2005 & Supp. 2009) (waiving immunity for certain breach of contract claims against local government entities). KCS also filed a counterclaim seeking: (1) a declaration that its claims are not barred by immunity; (2) an order compelling arbitration of KCS's claims; and (3) attorney's fees and costs of court. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a) (Vernon 2008). KCS specifically asserted in its counterclaim that by initiating the action in the trial court, PoCCA waived any sovereign immunity it may have otherwise enjoyed.

After a hearing, the trial court rendered its final judgment on March 10, 2009, granting all relief requested by PoCCA, including an injunction staying the arbitration proceedings and a declaration that PoCCA's immunity had not been waived.[4] Subsequently, in response to a request by KCS, the trial court entered findings of fact and conclusions of law, providing in relevant part as follows:

> The claims which [KCS] and [Tex Mex] sought to arbitrate are not within the scope of the arbitration provision in the 1997 Agreements.
>
> . . . .
>
> Neither KCS nor Tex-Mex provided "goods or services" to [PoCCA] under any contract between KCS or Tex-Mex and [PoCCA] as that term is used in [section 271.151 of the local government code].
>
> . . . .

---

[4] The final judgment also stated that "all claims for relief not expressly granted are hereby denied."

5

[PoCCA] is immune from suit, including the allegations of KCS/Tex Mex in their Counterclaim against [PoCCA] and those allegations in the KCS/Tex-Mex demand for arbitration of September 26, 2008, based upon the doctrine of [sovereign] immunity.

. . . .

[PoCCA] did not waive its immunity from suit by filing its "Petition for Declaratory Relief, Application for Temporary Restraining Order and Injunctive Relief."

. . . .

[PoCCA] did not waive [sovereign] immunity from suit by entering into a written contract with KCS or Tex-Mex as alleged in Defendants' Plea to the Jurisdiction, Original Answer and Counterclaim.

. . . .

In addition, the damages KCS/Tex-Mex are claiming in their demand for arbitration and/or counterclaim are not the type of damages which can be recovered under [section] 271.153 [of the local government code].

KCS filed a request for additional and amended findings of fact and conclusions of law on April 27, 2009; however, the trial court did not issue any additional or amended findings or conclusions. This appeal followed.

## II. DISCUSSION

### A. Trial Court's Failure to Issue Additional and Amended Findings of Fact and Conclusions of Law

By its first issue, KCS argues that the trial court erred by failing to issue additional and amended findings of fact and conclusions of law in response to its request. Specifically, KCS contends that the original findings of fact and conclusions of law rendered by the trial court "are conclusory and omit findings and conclusions on many specific issues necessary for a proper appellate review of the district court's judgment" and that KCS was "harmed in effective presentation of their appeal by the conclusory and incomplete nature" of the original findings and conclusions.

In its brief on appeal, KCS does not direct this Court to any case law, rule, or statute indicating that the trial court was somehow obligated to enter findings of fact or conclusions of law more detailed or comprehensive than those which were originally issued.

6

Accordingly, without considering the merits of this issue, we conclude that it has been inadequately briefed and therefore waived. *See* TEX. R. APP. P. 38.1(i) ("The [appellant's] brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."). KCS's first issue is overruled.

**B.    Sovereign Immunity**[5]

By its second issue, KCS argues that PoCCA's sovereign immunity has been waived pursuant to chapter 271 of the local government code and chapter 49 of the water code. By its fourth issue, KCS contends that PoCCA waived its immunity as to KCS's attorney's fees by initiating the underlying declaratory judgment action. We consider these issues together.

Before we do, however, we must address KCS's preliminary contention that, assuming the underlying claims are covered by the arbitration agreements, the issue of whether PoCCA is immune to suit should be decided in arbitration. Neither party has directed us to any authority, and we have found none, discussing whether arbitration itself is the proper forum to address whether the immunity of an arbitration respondent has been waived. We conclude that it is the judiciary's primary responsibility to decide whether an arbitration respondent's immunity has been waived. Sovereign immunity is jurisdictional in nature. *See, e.g., Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 379 (Tex. 2006) (op. on reh'g); *Mo. Pac. R.R. Co. v. Brownsville Navigation Dist.*, 453 S.W.2d 812, 814 (Tex. 1970). Therefore, if PoCCA's immunity has not been waived, not only would the trial court lack jurisdiction to adjudicate KCS's claims, but it would also lack jurisdiction to

---

[5] The terms sovereign immunity and governmental immunity, although often used interchangeably, involve two distinct concepts:

> Sovereign immunity refers to the State's immunity from suit and liability. In addition to protecting the State from liability, it also protects the various divisions of state government, including agencies, boards, hospitals, and universities. Governmental immunity, on the other hand, protects political subdivisions of the State, including counties, cities, and school districts.

*Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 (Tex. 2003) (internal citations omitted). For ease of reference, we will use the term "sovereign immunity" to refer to both sovereign immunity and governmental immunity. *See Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 n.1 (Tex. 2006) (op. on reh'g).

either compel PoCCA to participate in arbitration or to enforce any arbitration award entered against PoCCA. *See Town of Highland Park v. Iron Crow Constr., Inc.*, 168 S.W.3d 313, 317 (Tex. App.–Dallas 2005, no pet.) (noting that sovereign immunity is implicated where a private party sought a declaratory judgment compelling defendant city to arbitration). In other words, if a party is immune to a suit alleging a particular claim, it is also immune to the judicial enforcement of any arbitration award based upon that same claim. Just as it is the judiciary's proper role to determine whether a claim is covered by an arbitration agreement, *see* TEX. CIV. PRAC. & REM. CODE ANN. § 171.021(b) (Vernon 2005), it is similarly the primary function of the courts to determine whether a government defendant retains immunity as to any arbitration award.[6] Accordingly, we reject KCS's argument that the immunity issue should be submitted to arbitration; instead, we conclude that the question was properly addressed in the trial court.

### 1. Applicable Law and Standard of Review

In Texas, sovereign immunity has two components: (1) immunity from liability, which bars enforcement of a judgment against a governmental entity, and (2) immunity from suit, which bars suit against the entity altogether. *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006). Immunity from liability is an affirmative defense that must be pleaded, or else is waived. *Kinnear v. Tex. Comm'n on Human Rights*, 14 S.W.3d 299, 300 (Tex. 2000). By entering into a contract, a governmental entity necessarily waives immunity from liability, voluntarily binding itself like any other party to the terms of the agreement. *Tooke*, 197 S.W.3d at 332. However, the act of entering into a contract does not waive immunity from suit; instead, we defer to the legislature to waive immunity from suit because this allows the legislature to protect its policymaking function. *Id.* This is particularly true in the context of contract claims, where "legislative control over sovereign

---

[6] Of course, had PoCCA chosen to participate in arbitration in response to KCS's demand, PoCCA could have simply asserted its sovereign immunity defense in that forum. In such a situation, there would be nothing preventing the arbitrators from dismissing KCS's claim if they determined that PoCCA's immunity has not been waived. In other words, although courts have the *primary* responsibility for determining whether an arbitration respondent's immunity has been waived, there is nothing preventing arbitrators from exercising that responsibility if the matter is never brought to a court for consideration.

immunity allows the legislature to respond to changing conditions and revise existing agreements if doing so would benefit the public." *Id.* (quoting *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 854 (Tex. 2002)); *see Catalina Dev. Inc. v. County of El Paso*, 121 S.W.3d 704, 705-06 (Tex. 2003). Accordingly, sovereign immunity from suit may be waived only by "clear and unambiguous" statutory language. *Tooke*, 197 S.W.3d at 329, 332-33; *see* TEX. GOV'T CODE ANN. § 311.034 (Vernon Supp. 2009) ("In order to preserve the legislature's interest in managing state fiscal matters through the appropriations process, a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language.").

Neither party disputes the fact that PoCCA's immunity from liability was waived by its entering into the 1960 and 1997 agreements with the various rail carriers; accordingly, we are only concerned with PoCCA's immunity from suit. Immunity from suit deprives a court of subject matter jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004); *Sweeny Cmty. Hosp. v. Mendez*, 226 S.W.3d 584, 589 (Tex. App.–Houston [1st Dist.] 2007, no pet.). Whether the trial court has subject matter jurisdiction is a question of law that we review de novo. *See Miranda*, 133 S.W.3d at 226; *IT-Davy*, 74 S.W.3d at 855.

### 2.    Water Code Chapter 49

KCS first asserts that section 49.066(a) of the Texas Water Code serves to waive PoCCA's sovereign immunity. *See* TEX. WATER CODE ANN. § 49.066(a) (Vernon 2008). We disagree. Section 49.066(a) provides specifically that:

> A district may sue and be sued in the courts of this state in the name of the district by and through its board. A suit for contract damages may be brought against a district only on a written contract of the district approved by the district's board. All courts shall take judicial notice of the creation of the district and of its boundaries.

*Id.*

As the Texas Supreme Court explained in *Tooke v. City of Mexia*, dozens of Texas statutes provide that various government entities may "sue and (or) be sued," "(im)plead

9

and (or) be impleaded," "prosecute and defend," "defend or be defended," "answer and be answered," "complain and (or) defend," or some combination of these phrases. 197 S.W.3d at 328, 347-55 (providing a partial listing of such statutes). However, such words "do not, in and of themselves, waive immunity from suit." *Id.* at 328-29. Instead, the effect of a "sue and be sued" clause in an organic statute depends on the context in which it is used. *Id.* at 337. The words can mean that immunity is waived, but they can also mean only that a governmental entity, like others, has the capacity to sue and be sued in its own name. *Id.*

Since *Tooke*, all courts of appeal that have considered the "sue or be sued" language in section 49.066 have concluded that the language does not waive immunity. *See Boyer, Inc. v. Trinity River Auth. of Tex.*, 279 S.W.3d 354, 358 (Tex. App.–Fort Worth 2008, pet. denied); *Clear Lake City Water Auth. v. Friendswood Dev. Co.*, 256 S.W.3d 735, 744 (Tex. App.–Houston [14th Dist.] 2008, pet. dism'd); *Bexar Metro. Water Dist. v. Educ. & Econ. Dev. Joint Venture*, 220 S.W.3d 25, 29-32 (Tex. App.–San Antonio 2006, pet. dism'd); *see also Valley Mun. Util. Dist. No. 2 v. Rancho Viejo, Inc.*, No. 13-07-545-CV, 2008 Tex. App. LEXIS 1109, at *9-11 (Tex. App.–Corpus Christi Feb. 14, 2008, no pet.) (mem. op.). KCS has not offered any reason why this Court should stray from this precedent. Accordingly, we conclude that PoCCA's immunity from suit has not been waived by section 49.066 of the Texas Water Code.[7]

### 3.    Local Government Code Chapter 271

KCS next contends that PoCCA's immunity from suit has been waived by the provisions of subchapter I of chapter 271 of the Texas Local Government Code. *See* TEX. LOC. GOV'T CODE ANN. §§ 271.151-.160. Section 271.152 provides:

> A local governmental entity that is authorized by statute or the constitution
> to enter into a contract and that enters into a contract subject to this

---

[7] Even if section 49.066 were to be construed as an effective waiver of sovereign immunity, it is doubtful that such a waiver would apply to PoCCA, because chapter 49 explicitly states that it does not apply to "any navigation district or port authority created under general or special law." TEX. WATER CODE ANN. § 49.001(a) (Vernon 2008).

subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter.

*Id.* § 271.152. A "contract subject to this subchapter" is defined as "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity." *Id.* § 271.151(2).[8]

On appeal, KCS and PoCCA center their arguments on whether the 1997 Joint Operating Agreement called for KCS to provide "goods or services" to PoCCA such that the agreement qualifies as a "contract subject to this subchapter" under section 271.151(2). *See id.* This particular dispute turns on the interpretation of the Texas Supreme Court's opinion in *Ben Bolt-Palito Blanco Consolidated Independent School District v. Texas Political Subdivisions Property/Casualty Joint Self-Insurance Fund*, 212 S.W.3d 320 (Tex. 2006).[9] However, even assuming that the 1997 Joint Operating

---

[8] Both parties agree that PoCCA is a "local governmental entity" as defined in the statute. *See* TEX. LOC. GOV'T CODE ANN. § 271.151(3) (Vernon 2005).

[9] In *Ben Bolt*, the supreme court considered whether chapter 271 had waived the immunity of a state-sponsored self-insurance fund (the "Fund") when one of the Fund's members, a school district (the "District"), sued the Fund after the Fund denied a claim for benefits under the District's insurance policy. *Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 322 (Tex. 2006). The Fund argued, as PoCCA does here, that the contract at issue is not a "contract subject to this subchapter" because it does not call for goods or services to be provided to the Fund. *Id.* at 327. The supreme court disagreed, noting that the Fund's members, including the District, "elect a governing board, and a board subcommittee resolves claims disputes. To that extent, at least, the Fund's members provide services to the Fund." *Id.* The Court then concluded:

> Because the Fund is a "local government entity" as defined by Section 271.151(3) and "was authorized . . . to enter" and did in fact enter into "a written contract stating the essential terms of the agreement for providing [insurance] services to [a] local governmental entity," which agreement was properly executed, Tex. Loc. Gov't Code § 271.151(2), we conclude that the statutory waiver applies to this insurance-coverage dispute.

*Id.* at 328 (brackets and ellipsis in original).

According to KCS and at least one other court of appeals, the *Ben Bolt* decision represents a very broad construction of section 271.151(2), under which the provision of *any* goods or services to the local government entity makes the contract "subject to this subchapter," regardless of whether that provision of goods or services bears any relation to the underlying dispute. *See Clear Lake City Water Auth. v. Friendswood Dev. Co.*, 256 S.W.3d 735, 749-50 (Tex. App.–Houston [14th Dist.] 2008, pet. dism'd). This interpretation of *Ben Bolt* assumes that the Court's conclusion rested on the fact that the school district "elect[s] a governing board" for the Fund, thereby providing a "service" that brought the contract at issue under the purview of chapter 271.

On the other hand, as PoCCA notes, the *Ben Bolt* Court appears to state that its decision instead rested on the fact that the Fund provided "[insurance] services" to the District under the contract at issue.

11

Agreement was a "contract subject to this subchapter" under section 271.151(2), PoCCA's immunity has not been waived because the damages that KCS seeks are not of the type recoverable under the statute.

For immunity to be waived under section 271.152, the claimant must plead damages that are recoverable under section 271.153. *See Tooke*, 197 S.W.3d at 346 (holding that defendant city's immunity was not waived because plaintiffs sought only lost profits, which are consequential damages that are not recoverable under section 271.153); *City of Alton v. Sharyland Water Supply Corp.*, 277 S.W.3d 132, 145-46 (Tex. App.–Corpus Christi 2009, pet. filed) (op. on reh'g); *City of Houston v. S. Elec. Servs.*, 273 S.W.3d 739, 744 (Tex. App.–Houston [1st Dist.] 2008, pet. denied) (noting that "[s]ection 271.153 does not retract the privilege granted in [s]ection 271.152 to adjudicate the claim for breach, *if a plaintiff alleges facts to support such a claim and seeks recovery only of damages to the extent allowed*" (emphasis added)); *Judson Indep. Sch. Dist. v. ABC/Associated Benefit Consultants, Inc.*, 244 S.W.3d 617, 621 (Tex. App.–San Antonio 2008, no pet.); *but cf. City of Mesquite v. PKG Contracting, Inc.*, 263 S.W.3d 444, 448 (Tex. App.–Dallas 2008, pet. filed) (noting that "statutory limitations on [plaintiff]'s recoverable damages [in section 271.153] do not deprive the trial court of subject matter jurisdiction to adjudicate [plaintiff]'s breach of contract claims"). Section 271.153 states:

(a) The total amount of money awarded in an adjudication brought against a local governmental entity for breach of a contract subject to this subchapter is limited to the following:

(1) the balance due and owed by the local governmental entity under the contract as it may have been amended, including any amount owed as compensation for the increased cost to

Because the contract at issue called for "[insurance] services" to be provided "to [a] local government entity," the Court reasoned, then the Fund's immunity had been waived for the underlying insurance coverage dispute. *See Ben Bolt*, 212 S.W.3d at 328 (brackets in original). This interpretation suggests that the *Ben Bolt* Court employed a much narrower construction of section 271.151(2). Moreover, as PoCCA notes, it would only apply if *both* parties to a contract are local government entities, which is not the case here.

In any event, we need not resolve this ambiguity because, even assuming that the 1997 Joint Operating Agreement is a "contract subject to this subchapter," *see* TEX. LOC. GOV'T CODE ANN. § 271.151(2), PoCCA's immunity has not been waived with respect to KCS's claims for the reasons set forth herein.

12

perform the work as a direct result of owner-caused delays or acceleration;

    (2)    the amount owed for change orders or additional work the contractor is directed to perform by a local governmental entity in connection with the contract; and

    (3)    interest as allowed by law.

  (b)    Damages awarded in an adjudication brought against a local governmental entity arising under a contract subject to this subchapter may not include:

    (1)    consequential damages, except as expressly allowed under Subsection (a)(1);

    (2)    exemplary damages; or

    (3)    damages for unabsorbed home office overhead.

TEX. LOC. GOV'T CODE ANN. § 271.153. Consequential damages are defined as "'those damages which result naturally, but not necessarily,' from the defendant's wrongful acts." *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 636 (Tex. 2007) (quoting *Henry S. Miller Co. v. Bynum*, 836 S.W.2d 160, 163 (Tex. 1992) (Phillips, C.J., concurring)). Direct damages, on the other hand, compensate for the loss that is the necessary and usual result of the act. *Id.* (citing *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 816 (Tex. 1997)).

Here, KCS asserts that PoCCA's allegedly unfulfilled promise to maintain, operate, and provide free and open access to the Tule Lake Lift Bridge represents a "balance due and owed [by PoCCA to KCS] under the contract." *See* TEX. LOC. GOV'T CODE ANN. § 271.153. We disagree. The only promises alleged to have been made by PoCCA in the contracts at issue were to provide certain services to KCS and other rail carriers. Any failure to fulfill those promises would not be, strictly speaking, directly remediable by money damages. Moreover, the agreements did not provide that any monetary compensation such as liquidated damages would be owed to an aggrieved party in the event of a material breach. The damages that KCS claims are, at most, "natural[] but not necessar[]y" results of PoCCA's alleged wrongful acts. *See Sonnichsen*, 221 S.W.3d at 636. We therefore conclude that, even if KCS's underlying factual allegations are taken as true, there is no

13

"balance due and owed" to KCS under any of the agreements. *See* TEX. LOC. GOV'T CODE ANN. § 271.153; *City of Alton*, 277 S.W.3d at 146. Accordingly, PoCCA's sovereign immunity from suit has not been clearly and unambiguously waived by section 271.152 of the local government code. *See Tooke*, 197 S.W.3d at 346; *City of Alton*, 277 S.W.3d at 145-46; *City of Houston*, 273 S.W.3d at 744; *Judson Indep. Sch. Dist.*, 244 S.W.3d at 621. KCS's second issue is overruled.[10]

### 4. Declaratory Judgment Action

By its fourth issue, KCS argues that, by filing the underlying declaratory judgment action, PoCCA waived its sovereign immunity from suit with respect to KCS's attorney's fees.

As noted, when a state entity contracts with a private party, it waives immunity from liability but not from suit. *Tooke*, 197 S.W.3d at 332. However, when a governmental entity initiates suit against a private party, it waives immunity from suit with regard to any claims that are "germane to, connected to, and properly defensive to the [governmental entity]'s claims, to the extent [the private party]'s claims offset those asserted by the [governmental entity]." *Reata Constr. Corp.*, 197 S.W.3d at 378. In *Reata*, a property owner sued a government contractor and subcontractor for negligence. *Id.* at 373. The subcontractor filed a third-party claim against the City of Dallas ("the City"), which issued the contract. *Id.* Before answering the third-party claim, the City intervened in the case, asserting negligence claims against the contractor and subcontractor. *Id.* The City also filed a plea to the jurisdiction asserting sovereign immunity from suit, which the trial court granted. *Id.* The court of appeals reversed the trial court's decision, finding that when a governmental entity intervenes in a suit, "immunity still forecloses suit against that governmental entity." *City of Dallas v. Reata Constr. Corp.*, 83 S.W.3d 392, 399 (Tex. App.–Dallas 2002), *rev'd*, 197

---

[10] Because we find that PoCCA's immunity from suit has not been clearly and unambiguously waived with respect to KCS's claims regarding the Tule Lake Lift Bridge, it follows that PoCCA would be immune to the enforcement of any arbitration award based upon those claims. Accordingly, we need not address KCS's third issue arguing that its claims are in fact covered by the arbitration agreements entered into by the parties. *See* TEX. R. APP. P. 47.1.

S.W.3d 371. The Texas Supreme Court disagreed, noting that:

> Once it asserts affirmative claims for monetary recovery, the City must participate in the litigation process as an ordinary litigant, save for the limitation that the City continues to have immunity from affirmative damage claims against it for monetary relief exceeding amounts necessary to offset the City's claims.

*Reata Constr. Corp.*, 197 S.W.3d at 377[11]; *see Kinnear*, 14 S.W.3d at 300 (finding immunity from suit waived when private party sought attorney's fees as a consequence of a suit brought by the State); *TML Intergovernmental Employee Benefits Pool v. Prudential Ins. Co. of Am.*, 144 S.W.3d 600, 607 (Tex. App.–Austin 2004, pet. denied) (concluding that when government entity brought a declaratory judgment action against a private party, "it waived immunity from suit as to [the private party]'s request for attorney's fees under the same statute").

PoCCA argues that it did not request attorney's fees in its petition for declaratory relief and, therefore, that it did not waive any immunity from suit by filing the petition. However, in its original petition, PoCCA asked for declaratory and injunctive relief as well as "[s]uch other and further relief to which [PoCCA] may show itself to be justly entitled." Under the Uniform Declaratory Judgments Act ("UDJA"), "[s]uch other and further relief" arguably includes court costs and attorney's fees. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (Vernon 2008) ("In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just."); *see also Barshop v. Medina County Underground Water Conservation Dist.*, 925 S.W.2d 618, 637

---

[11] The *Reata* Court recognized that the public policy underlying the immunity doctrine includes protection of the legislature's role in managing fiscal affairs through the appropriations process. *Reata Constr. Corp.*, 197 S.W.3d at 375. Nevertheless, the Court justified its decision by noting:

> [I]f the governmental entity interjects itself into or chooses to engage in litigation to assert affirmative claims for monetary damages, the entity will presumably have made a decision to expend resources to pay litigation costs. If the opposing party's claims can operate only as an offset to reduce the government's recovery, no tax resources will be called upon to pay a judgment, and the fiscal planning of the governmental entity should not be disrupted. Therefore, a determination that a governmental entity's immunity from suit does not extend to a situation where the entity has filed suit is consistent with the policy issues involved with immunity.

*Id.*

15

(Tex. 1996) (noting that, under the UDJA, a party need not prevail on the merits in order to be awarded attorney's fees).

Regardless of whether PoCCA's request for "[s]uch other and further relief" constitutes an implicit request for attorney's fees, we nevertheless conclude that PoCCA retained its immunity from suit because the trial court ultimately declined to award any such fees to PoCCA. As noted, even when a governmental entity initiates suit, as PoCCA did here, it retains immunity from affirmative claims against it for monetary relief exceeding amounts necessary to offset the governmental entity's claims. *Reata Constr. Corp.*, 197 S.W.3d at 377. Here, even though the trial court had jurisdiction to award costs and attorney's fees to PoCCA, the final judgment reflects that the trial court declined to do so.[12] Because the trial court awarded no costs, fees, or other monetary relief to PoCCA, there is no amount of monetary relief that could have been awarded to KCS that would have merely "offset" PoCCA's claims. *See id.* at 378.

KCS's fourth issue is overruled.

### III. CONCLUSION

We affirm the judgment of the trial court.


_____
DORI CONTRERAS GARZA,
Justice

Delivered and filed the
10th day of December, 2009.

---

[12] *See supra* n.4.

16