

# NUMBER 13-21-00281-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

LA JOYA INDEPENDENT
SCHOOL DISTRICT,                                        Appellant,

v.

RUTH VILLARREAL INSURANCE
AGENCY, LLC,                                            Appellee.

## On appeal from the 398th District Court
of Hidalgo County, Texas.

# MEMORANDUM OPINION

Before Justices Benavides, Silva, and Peña[1]
Memorandum Opinion by Justice Silva

---

[1] The Honorable Leticia Hinojosa, former Justice of this Court, did not participate in this decision because her term of office expired on December 31, 2022. In accordance with the appellate rules, she was replaced on panel by Justice Lionel Aron Peña Jr. *See* TEX. R. APP. P. 41.1(a).

Appellant La Joya Independent School District (La Joya) appeals the trial court's denial of its plea to the jurisdiction seeking to dismiss appellee Ruth Villarreal Insurance Agency, LLC's (Agency) breach of contract claim. By two issues, La Joya argues the trial court erred by denying its plea because the Agency did not establish a waiver of its governmental immunity, and thus, the trial court lacked jurisdiction over the Agency's claims. We affirm.

## I.    BACKGROUND

The history between these two parties spans several years. Because the question before us now invokes a prior case between the parties, we provide a brief review of that case. *See La Joya Indep. Sch. Dist. v. Villarreal*, No. 13-13-00325-CV, 2014 WL 3050484 (Tex. App.—Corpus Christi–Edinburg July 3, 2014, pet. denied) (mem. op.). Then and now, the Agency provided insurance services to La Joya. In the prior suit, the Agency and Ruth Villarreal, individually, alleged that certain school board members placed an item on the board's agenda to switch from the Agency to another insurance provider that politically supported those board members. *See id.* at *2. After La Joya canceled the contract, the Agency and Villarreal filed suit against La Joya and the board members for breach of contract. *Id.* La Joya filed a plea to the jurisdiction, arguing that it enjoyed immunity from the Agency's suit. *Id.* The trial court denied La Joya's plea, and this Court affirmed the trial court's ruling. *Id.*

La Joya and the Agency then entered into a settlement agreement, whereby the parties would release their claims against each other. Further, La Joya agreed to pay to the Agency $300,000 for "past actual damages" and $1.5 million to the Agency and

2

Villarreal's attorneys for attorneys' fees.[2] The settlement agreement specifies that

> [t]he parties further agree that as part of the consideration for La Joya's release, it has agreed to hire [the Agency] to be its exclusive [i]nsurance [a]gent, and to enter into a contract for such services . . . . It is acknowledged by the parties that [the Agency] has chosen to forgo the remaining $3,300,000.00 [Villarreal] claims as actual damages against [La Joya] only in order for the opportunity to enter into the exclusive agent/consultant of record contract to be paid for services to be performed in the future.

As contemplated, the parties entered into an exclusive insurance agent and professional services agreement, which was set to expire on February 30, 2024. As relevant here, the insurance agreement contained a liquidated damages clause:

> [i]n consideration of the services, agreements, and settlement of prior litigation between the parties, in the event that [La Joya] terminates this agreement prior to its expiration on December 15, 2024, for any reason, [La Joya] shall pay liquidated damages to [the Agency] in the amount of $68,375.00 per month, for each month remaining on the original term of this agreement at the time of termination.

The contract also required the parties to reevaluate the commission rate every two years to keep it within industry standards. Dr. Alda Benavides, La Joya's school board superintendent, signed the settlement agreement on January 30, 2017, and its counsel signed the settlement agreement on February 6, 2017. Oscar "Coach" Salinas, La Joya's school board president, signed the insurance agreement on January 30, 2017. Villarreal signed both agreements on January 31, 2017, and her counsel signed the settlement agreement on February 1, 2017. Both agreements contained a merger clause.

On October 31, 2019, La Joya sent a letter to the Agency and Villarreal through its

---

[2] In the first suit, Ruth Villarreal, individually, was a plaintiff with the Agency. Portions of the record and accompanying documents may refer to either Villarreal individually or the Agency.

counsel, notifying the Agency that it was exercising its authority to renegotiate the commission rate. According to La Joya, it hired an independent insurance consultant who determined that La Joya was "extremely overpaying for the services being provided." According to the independent consultant, La Joya should have been paying one fourth to one third the existing commission rate. In its letter, La Joya notified the Agency that it was discontinuing the group benefit plans and stop-loss coverage as defined by the insurance agreement but would continue receiving voluntary plans under the agreement.

The Agency responded to La Joya that it was willing to renegotiate the current agreement. However, La Joya responded with concerns over the Agency's use of the word "commissions" and the insurance agreement's use of "service fees," contending that the contract authorized additional fees that are not commissions. The letter also requested Villarreal or the Agency produce their insurance counselor's license, stating they had been unable to locate it on the Texas Department of Insurance website. La Joya noted that a person without a counselor's license was not permitted to provide services "as defined by [§] 4052.001 of the Texas Insurance Code or charge a fee for such services."[3]

La Joya sent an additional letter on December 12, 2019, proposing a renegotiated contract that discontinued group benefit plans and stop-loss coverage but maintained

---

[3] Section 4052.001 was repealed effective September 1, 2021. *See* Acts 2021, 87th Leg., R.S., ch. 355 (H.B. 4030), § 7, sec. 22(6), 2021 Tex. Sess. Law Serv. Ch. 355 (repealed 2021). The former section defined a "life and health insurance counselor." *See id.* All previously issued life and health insurance counselor's licenses were converted to "a general lines agent with a life, accident, and health qualification." TEX. DEP'T INS., *Commissioner's Bulletin # B-0019-21*, (July 12, 2021), https://www.tdi.texas.gov/bulletins/2021/B-0019-21.html (last visited January 17, 2023); *see also* TEX. INS. CODE ANN. § 4054.051 (setting out various insurance services that require a "general life, accident, and health license").

voluntary plans under the agreement. La Joya contended that Villarreal and the Agency lacked the necessary license, but even if they did have the necessary license, they were not permitted to "receive compensation for the same service provided to the same client if the counselor receives compensation for the services as an agent under Chapter 4054 of the Texas Insurance Code."[4]

Ultimately, on February 27, 2020, La Joya filed an original petition alleging that the Agency breached the insurance agreement and engaged in fraudulent inducement, common law fraud, and constructive fraud by representing to La Joya that the Agency had all required licenses when it did not. La Joya sought recission of the contract, actual and exemplary damages, and attorney's fees. On August 31, 2021, La Joya filed its first amended petition which included a request for

> a declaratory judgment that (1) the [i]nsurance [c]ontract is void and/or voidable because [the Agency] does not hold the requisite license to perform services under the [i]nsurance [c]ontract; (2) the [i]nsurance [c]ontract is void and/or voidable because it violates the Texas Insurance Code; and (3) [the Agency's] services to [La Joya] created a conflict of interest.

On August 27, 2020, the Agency filed a counter petition, alleging La Joya breached the settlement agreement by canceling a separate prescription care contract which

---

[4] La Joya cited § 4052.055, which was similarly repealed. *See* Acts 2021, 87th Leg., R.S., ch. 355, § 7, sec. 22(6), 2021 Tex. Sess. Law Serv. Ch. 355 (repealed 2021). Section 4052.055 prohibited a life and health insurance *counselor* from receiving compensation if they receive compensation as an *agent* under Chapter 4054. Chapter 4054 sets out the provisions applicable to a general life, accident, and health insurance agent. *See* TEX. INS. CODE ANN. §§ 4054.001–.359. Prior to the repeal of Chapter 4052, Texas Department of Insurance issued separate licenses for insurance counselors and insurance agents. TEX. DEP'T INS., *Commissioner's Bulletin # B-0041-07*, (October 17, 2007), https://www.tdi.texas.gov/bulletins/2007/cc41.html (last visited January 17, 2023). Insurance agents are typically affiliated with a limited number of insurance companies while insurance counselors were able to "act solely on behalf of the client in an advisory or counseling capacity when considering insurance products" rather than as an agent for the insurance companies. *See id.*

terminated certain fees the Agency was receiving as part of the contract. The Agency's live pleading was its second amended counter petition filed on February 2, 2021, which alleged that La Joya breached the settlement agreement and interfered with the insurance agreement. The Agency further alleged that La Joya's actions regarding the insurance agreement were part of a political scheme of one of its board members, Salinas, in response to Villarreal's husband running for La Joya school board.

The Agency's petition alleged that Salinas was part of a slate of candidates who deemed themselves "TeamUn1ted," which included four candidates. On November 6, 2020, three of the TeamUn1ted candidates won their election, allowing Salinas to garner a majority of the votes on the school board. On December 14, 2020, La Joya sent a formal notice to the Agency, terminating it as the exclusive insurance agent. The Agency sought liquidated damages under the contract for each month remaining on the contract.

On November 23, 2020, prior to any amended petitions by the Agency, La Joya filed a plea to the jurisdiction, arguing that the Agency failed to allege any facts supporting its claim that La Joya breached any agreement. La Joya asserted that the Agency's failure to do so required the trial court to dismiss the Agency's claims because La Joya enjoyed sovereign immunity for which no waiver existed. After the Agency filed its first amended petition, it filed a response to La Joya's plea with objections, asking the trial court to strike the plea as moot because the Agency had amended its petition to alleviate any deficiencies. On January 20, 2021, the trial court sustained the Agency's objections and struck La Joya's plea as moot.

On June 9, 2021, La Joya filed a second plea to the jurisdiction, arguing that the

Agency's request for liquidated damages, which was calculated using the Agency's lost profits, was a request for consequential damages for which there is no waiver of immunity. *See* TEX. LOCAL GOV'T CODE ANN. § 271.153(b)(1); *see also La Joya Indep. Sch. Dist. v. Trevino*, No. 13-17-00333-CV, 2019 WL 1487358, at *5 (Tex. App.—Corpus Christi–Edinburg Apr. 4, 2019, pet. dism'd) (mem. op.) (holding lost fees and commissions "constitute lost profits which are consequential damages excluded from recovery under [§] 271.153"). On the same day, La Joya filed a motion requesting that the trial court rule on its original plea to the jurisdiction.

On August 31, 2021, the Agency filed its response to La Joya's second plea to the jurisdiction. The Agency argued that La Joya's plea should be denied because La Joya is not immune from suit or liability for breaching a settlement agreement. In support of this argument, the Agency asserted that the insurance agreement and settlement agreement were executed at the same time and reference each other, so they should be construed as one agreement. The Agency further argued that if the trial court determined immunity was not waived for a breach of settlement agreement, liquidated damages are not necessarily consequential damages, but are part of "the balance due and owed" by La Joya for which there is a waiver. *See* TEX. LOCAL GOV'T CODE ANN. § 271.153(a)(1); *see also McKinney & Moore, Inc. v. City of Longview*, No. 14-08-00628-CV, 2009 WL 4577348, at *5 (Tex. App.—Houston [14th Dist.] Dec. 8, 2009, pet. denied) (mem. op.) (holding that "by definition, if particular damages are specifically accounted for in the contract, they are direct, not consequential, in nature"). The Agency argued, "The liquidated damages that [the Agency] seeks to recover in the instant action are direct in

7

nature because [the parties] . . . contemplated, at the time of contract formation, that the liquidated damages in question would be the result of the breach of the exclusive insurance agent agreement." Lastly, the Agency argued that various fact questions precluded the trial court from sustaining La Joya's plea.

After a hearing, the trial court denied La Joya's plea to the jurisdiction. This appeal followed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8).

## II.     STANDARD OF REVIEW

"Local governmental entities 'enjoy governmental immunity from suit, unless immunity is expressly waived.'" *Lubbock Cnty. Water Control & Imp. Dist. v. Church & Akin, L.L.C.*, 442 S.W.3d 297, 300 (Tex. 2014) (quoting *Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 836 (Tex. 2010)). "Governmental immunity includes both immunity from liability, 'which bars enforcement of a judgment against a governmental entity, and immunity from suit, which bars suit against the entity altogether.'" *Id.* If a local governmental entity enjoys governmental immunity, the trial court does not have subject matter jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004).

A plea to the jurisdiction is a dilatory plea used "to defeat a cause of action without regard to whether the claims asserted have merit." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). The plea challenges the trial court's subject matter jurisdiction over a pleaded cause of action. *Miranda*, 133 S.W.3d at 226. "When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *Id.* We will

8

liberally construe the pleadings and look to the pleader's intent. *Id.* When the determinative facts are undisputed, we review the trial court's ruling on a plea to the jurisdiction de novo. *Id.* The plaintiff carries the initial burden to plead facts affirmatively showing that the trial court has jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993).

"However, if a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do." *Miranda*, 133 S.W.3d at 227. If the evidence creates a fact question, the plea to the jurisdiction should not be granted, and the fact issue should be resolved by the trier of fact. *Id.* at 228. If, on the other hand, the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court should rule on the plea to the jurisdiction as a matter of law. *Id.* This standard generally mirrors that of summary judgment. *Id.*; *see generally* TEX. R. CIV. P. 166a(c).

Accordingly, when challenging the jurisdictional facts, the governmental unit carries the initial burden. *Miranda*, 133 S.W.3d at 228. "[A]fter the [governmental unit] asserts and supports with evidence that the trial court lacks subject matter jurisdiction, we simply require the plaintiffs, when the facts underlying the merits and subject matter jurisdiction are intertwined, to show that there is a disputed material fact regarding the jurisdictional issue." *Id.* "When reviewing a plea to the jurisdiction in which the pleading requirement has been met and evidence has been submitted to support the plea that implicates the merits of the case, we take as true all evidence favorable to the

9

nonmovant." *Id.* "We indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Id.*

### III.    APPLICABLE LAW

#### A.    Waiver of Immunity

It is up to the legislature to waive immunity for local governmental entities, and it must do so by "clear and unambiguous language." *Church & Akin, L.L.C.*, 442 S.W.3d at 301 (citing TEX. GOV'T CODE ANN § 311.034). The legislature has created one such waiver for certain contract claims:

> A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter.

TEX. LOCAL GOV'T CODE ANN. § 271.152. However, the legislature has also limited the types of damages a claimant may recover for breach of contract against a local governmental entity. *Id.* § 271.153; *see Tooke v. City of Mexia*, 197 S.W.3d 325, 346 (Tex. 2006) (holding a local governmental entity's immunity is not waived unless damages sought are permitted by § 271.153).

Section 271.153 limits recovery of money damages under a breach of contract claim to "the balance due and owed by the local governmental entity under the contract," "the amount owed for change orders," and "reasonable and necessary attorney's fees that are equitable and just[,] and interest as allowed by law." TEX. LOCAL GOV'T CODE ANN. § 271.153(a)(1)–(4). The statute does not allow a claimant to recover "consequential damages" or "exemplary damages[.]" *Id.* § 271.153(b)(1), (2).

A "balance due and owed" under the contract "is simply the amount of damages

10

for breach of contract payable and unpaid." *Zachry Constr. Corp. v. Port of Hous. Auth. of Harris Cty.*, 449 S.W.3d 98, 111 (Tex. 2014). Consequential damages, on the other hand, are "those damages which result naturally, but not necessarily, from the defendant's wrongful acts." *Kan. City S. v. Port of Corpus Christi Auth. of Nueces Cnty.*, 305 S.W.3d 296, 307 (Tex. App.—Corpus Christi–Edinburg 2009, pet. denied) (cleaned up). Lost profits, commissions, or other fees constitute consequential damages. *Tooke*, 197 S.W.3d at 346; *see also Trevino*, 2019 WL 1487358, at *5.

Further, when a governmental entity files suit asserting affirmative claims for monetary relief, it lacks immunity for claims from the adverse party as an offset that are "germane to, connected with, and properly defensive to those asserted by the governmental entity." *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 377 (Tex. 2006); *see Hughes v. Tom Green County*, 573 S.W.3d 212, 217 (Tex. 2019). The waiver of immunity in such instances does not apply to damages in excess of an offset to the governmental unit's damages. *Reata*, 197 S.W.3d at 377.

## B. Merger Clauses

"A 'merger clause' is a contractual provision to the effect that the written terms of the contract may not be varied by prior agreements because all such agreements have been merged into the written document." *W. Loop Hosp., LLC v. Hous. Galleria Lodging Assocs., LLC*, 649 S.W.3d 461, 483 (Tex. App.—Houston [1st Dist.] 2022, pet. denied) (quoting *San Antonio Props., L.P. v. PSRA Invs., Inc.*, 255 S.W.3d 255, 260 (Tex. App.—San Antonio 2008, pet. granted, judgm't vacated w.r.m.)). However, "[w]here appropriate, 'a court may determine, as a matter of law,' that multiple separate contracts, documents,

11

and agreements 'were part of a single, unified instrument.'" *Rieder v. Woods*, 603 S.W.3d 86, 94 (Tex. 2020) (quoting *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex. 2000)). We must construe multiple documents together with caution, bearing in mind that tethering documents to each other is "simply a device for ascertaining and giving effect to the intention of the parties and cannot be applied arbitrarily and without regard to the realities of the situation.'" *Id*. at 94–95 (quoting *Miles v. Martin*, 321 S.W.2d 62, 65 (Tex. 1959)).

## C.      Liquidated Damages

"The term 'liquidated damages' ordinarily refers to an acceptable measure of damages that parties stipulate in advance will be assessed in the event of a contract breach." *Flores v. Millennium Ints., Ltd.*, 185 S.W.3d 427, 431 (Tex. 2005).

## IV.      ANALYSIS

## A.      Breach of the Settlement Agreement

La Joya argues that the trial court lacked jurisdiction over the Agency's breach of contract claim for the settlement agreement because the Agency failed to plead facts alleging a violation of the terms of the settlement agreement. La Joya further contends that the Agency's breach of contract claim for the insurance agreement cannot support a claim for breach of the settlement agreement because they are two distinct contracts. In response, the Agency argues the two contracts should be construed together because the settlement agreement required the insurance agreement to be signed, the two contracts were contemplated in tandem during the course of a single transaction, and both documents were executed at the same time by the same parties.

12

Although both the settlement agreement and insurance agreement contain merger clauses, the settlement agreement contemplates and requires the execution of the insurance agreement. *See Jones v. Kelley*, 614 S.W.2d 95, 99 (Tex. 1981) (looking to the intent of the parties to conclude that four separate documents were for the purpose of a singular transaction). Further, both agreements were executed by the same parties, at the same time, and both relate to a settlement regarding the purchase of insurance services by La Joya from the Agency. *See Rieder*, 603 S.W.3d at 94. Because the execution of the insurance agreement was "a necessary part of the same transaction" as the settlement agreement, we conclude that as a matter of law the two agreements "were part of a single, unified instrument." *See id.*; *Fort Worth Indep. Sch. Dist*, 22 S.W.3d at 840 (concluding that a series of documents between two governmental entities constituted a single, unified contract).

Having concluded that both contracts constitute one agreement, we turn to La Joya's first issue: the Agency failed to plead facts in support of its claim that La Joya breached the settlement agreement. However, the Agency's second amended counter petition does just that by alleging a violation of the terms of the settlement agreement. Specifically, the Agency alleges that La Joya breached the settlement agreement when it cancelled the insurance agreement because the insurance agreement was a necessary component of the settlement agreement. La Joya's first issue is overruled.

## B. Permissible Damages

By its second issue, La Joya argues that the trial court lacked jurisdiction over the Agency's breach of contract of the insurance agreement because the damages sought

are not permitted by Texas Local Government Code § 271.153(b)(1). *See* TEX. LOCAL GOV'T CODE ANN. § 271.153(b)(1) (prohibiting consequential damages in breach of contract suits against a local governmental entity); *Tooke*, 197 S.W.3d at 346 (concluding that lost profit damages are consequential damages prohibited by § 271.153(b)(1)). La Joya asserts that § 271.153(a)(1) limits the damages recoverable under a breach of contract claim to amounts owed for work performed under a contract. La Joya further argues that because the Agency seeks damages in excess of an amount that would offset its own claim, the waiver of jurisdiction pursuant to *Reata* does not apply. *See Reata Constr. Corp.*, 197 S.W.3d at 377 ("Once it asserts affirmative claims for monetary recovery, [the governmental entity] must participate in the litigation process as an ordinary litigant, save for the limitation that [it] continues to have immunity from affirmative damage claims against it for monetary relief exceeding amounts necessary to offset [it]s claims.").

We must first determine whether the waiver of immunity established by *Reata* applies to the Agency's counterclaim. In *Reata*, the Texas Supreme Court created two possible categories for counterclaims to a governmental entity's claim for affirmative relief:

> The first category consisted of claims that would offset, in whole or in part, any recovery by the City and that were germane to, connected with, and properly defensive to the City's claims. The second category consisted of (1) claims for amounts over and above the amount that would offset the City's claim but were nevertheless germane to, connected with, and properly defensive to the City's claims; and (2) claims that simply were not germane to, connected with, or properly defensive to the City's claim. The City had immunity from suit as to both types of claims in the second category, but it did not have immunity from suit as to claims in the first category.

*City of Dallas v. Albert*, 354 S.W.3d 368, 374–75 (Tex. 2011) (discussing *Reata*).

14

Accordingly, under *Reata* and its progeny, a waiver of immunity exists to the extent the Agency claims damages of an amount that would operate as an offset to La Joya's own affirmative claims, but we must determine whether an independent waiver of immunity exists for any amount beyond an offset.[5] *See id.*; *See Reata Constr. Corp.*, 197 S.W.3d at 377. Thus, the question before us is whether liquidated damages constitute an "amount due and owed" under the contract or impermissible consequential damages under the statute. *See* TEX. LOCAL GOV'T CODE ANN. § 271.153.

When interpreting statutory language, we "presume that the Legislature chose its words carefully, recognizing that every word in a statute was included for some purpose and that every word excluded was omitted for a purpose." *In re J.R.*, 652 S.W.3d 508, 513 (Tex. App.—Houston [14th Dist.] 2022, no pet.) (citing *Hogan v. Zoanni*, 627 S.W.3d 163, 175 (Tex. 2021)). Subsection (a)(1) permits a trial court to award "the balance due and owed by the local governmental entity under the contract . . . ." *Id.* § 271.153(a)(1). The balance due and owed "is simply the amount of damages for breach of contract payable and unpaid." *Zachry Constr. Corp.*, 449 S.W.3d at 111.

La Joya takes the position that this should be read to limit amounts due to work or services the Agency has already performed prior to the breach. In support of its position, La Joya points to our decision in *La Joya Independent School District v. Trevino*, wherein we held Trevino could not seek lost profit damages from La Joya for breach of contract because lost profit damages constitute consequential damages. *See Trevino*, 2019 WL

---

[5] La Joya does not argue that the Agency's counterclaims are not germane to, connected with, or properly defensive to its own affirmative claims.

1487358, at *5. However, *Trevino* did not involve a liquidated damages clause; rather, Trevino's sole form of damages was expressly for lost profits. *See id.* at *1. Thus, we find *Trevino* to be inapposite.

Further, we find La Joya's interpretation of "the balance due and owed . . . under the contract" including only compensation for work performed under the contract to be overly restrictive. In presuming the legislature carefully selected the language in § 271.153(a)(1), we note that the legislature did not restrict the recovery for breach of contract to amounts owed for "worked performed under the contract." *See In re J.R.*, 652 S.W.3d at 513. Instead, the legislature provided recovery for amounts "due and owed . . . under the contract," which is more expansive. *See* TEX. LOCAL GOV'T CODE ANN. § 271.153(a)(1).

Liquidated damages are a predetermined calculation of damages owed by a breaching party for breaching the contract. *See Flores*, 185 S.W.3d at 431. Accordingly, we conclude that liquidated damages constitute an amount "due and owed by the local governmental entity under the contract." *See* TEX. LOCAL GOV'T CODE ANN. § 271.153(a)(1); *McKinney & Moore, Inc.*, 2009 WL 4577348, at *5 ("[B]y definition, if particular damages are specifically accounted for in the contract, they are direct, not consequential, in nature."). La Joya directs our attention to a declaration by Villarreal that the liquidated damages are equivalent to the Agency's lost profits. However, the basis that the parties used to calculate and agree to liquidated damages does not change their nature.[6] *See, e.g.*, *FPL Energy, LLC v. TXU Portfolio Mgmt. Co., L.P.*, 426 S.W.3d 59,

---

[6] La Joya does not argue on appeal that the liquidated damages constitute an impermissible penalty. *See Phillips v. Phillips*, 820 S.W.2d 785, 788 (Tex. 1991); *see also Atrium Med. Ctr., LP v. Hous.*

16

71 (Tex. 2014) (declining to label liquidated damages as a penalty "merely because the liquidated damages clause derives from a 'penalty' scheme" found in the administrative code). Accordingly, we conclude that the Agency's claim for damages is permissible under § 271.153, thus waiving La Joya's immunity. *See* TEX. LOCAL GOV'T CODE ANN. § 271.153(a)(1).

Having determined that La Joya's immunity has been waived pursuant to *Reata* and that the liquidated damages represent an amount due and owed under the contract, we conclude the trial court did not err by denying La Joya's plea to the jurisdiction. *See* TEX. LOCAL GOV'T CODE ANN. §§ 271.152, 271.153(a)(1); *Reata Constr. Corp.*, 197 S.W.3d at 377.

## V.    CONCLUSION

We affirm the trial court's judgment.[7]

CLARISSA SILVA
Justice

Delivered and filed on the
23rd day of February, 2023.

---

*Red C LLC*, 595 S.W.3d 188, 196 (Tex. 2020) ("[T]o show that a liquidated damages provision is unreasonable because the actual damages incurred were much less than the amount contracted for, a defendant may be required to prove what the actual damages were." (quoting *Phillips*, 820 S.W.2d at 788)).

[7] On March 23, 2022, the Agency filed an unopposed motion to expedite our ruling, which we carried with the case. The motion is hereby denied as moot.